OPINION
{¶ 1} Defendant-appellant Mohammad Poindexter appeals his conviction and sentence for one count of aggravated robbery in violation of R.C. § 2911.01(A)(1), one count of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(3), and one count of having weapons while under disability in violation of R.C. § 2923.13(A)(2). Both the aggravated *Page 2 
robbery and felonious assault counts contained firearm specifications as well as repeat violent offender specifications.
 {¶ 2} On August 27, 2004, Poindexter was charged by indictment with one count of aggravated robbery and one count of felonious assault, each count accompanied by a firearm specification and a repeat violent offender specification. On September 10, 2004, Poindexter was additionally charged by indictment with one count of having a weapon while under disability.
 {¶ 3} On September 17, 2004, Poindexter filed a motion to suppress. A hearing was held on said motion on December 1 and 17, 2004. In a written decision filed on January 7, 2005, the trial court overruled Poindexter's motion in its entirety. Following a jury trial which began on March 21, 2005, and concluded on March 24, 2005, Poindexter was found guilty on all counts. On April 6, 2005, the trial court sentenced Poindexter to twelve (12) years for the aggravated robbery count accompanied by the firearm specification. He was sentenced to ten (10) years for the felonious assault with a deadly weapon accompanied by a firearm specification. These sentences were to be served concurrently with each other. The trial court also sentenced Poindexter to (5) years after finding that he was a repeat violent offender. Lastly, the court sentenced Poindexter to one (1) year on the count for having weapons while under disability. The sentences for the repeat violent offender specification and the weapons under disability charge were to be served consecutively to the sentence for counts one and two for an aggregate sentence of eighteen (18) years imprisonment. Poindexter filed a timely notice of appeal with this Court on April 26, 2005.
 I *Page 3 {¶ 4} On June 29, 2004, Miranda Neal was an assistant manager at the Kentucky Fried Chicken restaurant located on Salem Avenue in Trotwood, Ohio. Neal's duties that day required her to make a bank deposit at the Bank One branch also located on Salem Avenue. At approximately 10:15 a.m., Neal arrived at Bank One to make the scheduled deposit[1]. As she was about to enter the bank, she was approached by a heavyset African-American male carrying a firearm. The man was wearing a mask with the face partially cut out which allowed Neal to see his nose and eyes. He demanded the bag containing the deposit which Neal was carrying. Fearing for her life, Neal threw the bag at the man and ran inside the bank. The man, later identified by Neal as Poindexter, was observed leaving the bank parking lot in a white Oldsmobile Alero missing its front license plate.
 {¶ 5} Detective Valerie Turner of the Trotwood Police Department was assigned to investigate the robbery. On July 2, 2004, Detective Turner met with Neal and showed her two photo spreads. The first photo spread contained a picture of Poindexter's brother, Messiah, but not Mohammed Poindexter. After viewing the first photo spread, Neal noted that Messiah's nose closely resembled the nose of the man who had robbed her. The second photo spread included a picture of the appellant. After viewing the second photo spread, Neal identified Mohammed Poindexter as the man who robbed her.
 {¶ 6} After a jury trial, Poindexter was convicted of all the charges contained in the indictment and sentenced accordingly. It is from this judgment that Poindexter now appeals.
 II *Page 4 {¶ 7} Poindexter's first assignment of error is as follows:
 {¶ 8} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE REGARDING THE IDENTIFICATION OF DEFENDANT FOLLOWING AN UNDULY SUGGESTIVE PHOTO ARRAY IDENTIFICATION PROCEDURES WHICH PROCEDURES WHERE [sic] IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS UNDER THE FOURTH,FIFTH, SIXTH AND FOURTEENTH AMENDMENTS."
 {¶ 9} In his first assignment, Poindexter contends that the trial court erred when it overruled his motion to suppress evidence of his identification following the photographic arrays shown to Neal by Detective Turner. Poindexter argues that the two photographic arrays were unduly suggestive because the first array contained a picture of Poindexter's brother Messiah, and the second photo spread contained a picture of Poindexter, himself. Poindexter asserts that he and his brother have the same distinctive nose. By placing a picture of the brothers in each respective array, Neal would be drawn to the two photos with similar features, thereby rendering the arrays unduly suggestive towards Poindexter. We disagree.
 {¶ 10} With respect to a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v.Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting Statev. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v.Isaac (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citingState v. Retherford (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, *Page 5 
the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 11} To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and that the identification itself was unreliable under the totality of the circumstances.Manson v. Brathwaite (1977), 432 U.S. 98, 106; Neil v. Biggers (1972),409 U.S. 188, 199; Simmons v. United States (1968), 390 U.S. 377, 384. See, also, State v. Broom (1988), 40 Ohio St.3d 277, 284; State v.Moody (1978), 55 Ohio St.2d 64, 67.
 {¶ 12} In State v. Sherls (Feb. 22, 2002), Montgomery App. No. 18599, 2002-Ohio-939, this court addressed the issue of suggestive photographic confrontations:
 {¶ 13} "In many cases, and in almost all cases in which the criminal offender is not
 {¶ 14} known to his victim or other eyewitnesses and is not arrested at the time of the crime, those who witness the crime are asked to identify the perpetrator for purposes of police investigation through some form of confrontation. This confrontation may be in the form of a `lineup,' a one-on-one `show up,' or from a photograph or series of photographs displayed to the witness. When any of these systems of confrontation suggest, due to the manner or mode of their presentation, that one individual is more likely than others to be the perpetrator of the crime, that fact increases the likelihood of misidentification and violates the right to due process of law of a defendant so identified. Identification testimony that has been tainted by an unduly or unnecessarily suggestive out-of-court confrontation may be suppressed on *Page 6 
that basis.
 {¶ 15} "However, even when a confrontation is unnecessarily or unduly suggestive, the identification testimony derived from the confrontation is not inadmissible solely for that reason. Reliability of the testimony is the linchpin in determining its admissibility. So long as the identification possesses sufficient aspects of reliability, there is no violation of due process.
 {¶ 16} "Reliability is determined from the totality of the circumstances. These circumstances include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
 {¶ 17} "The foregoing due process concerns are implicated only if and when a confrontation is unnecessarily or unduly suggestive. That prospect usually arises when the witness has been shown but one subject, whether in a `showup' * * * or a single photograph * * *. Similarly, if the witness is shown pictures or photographs of several persons in which the photograph of one recurs or is in some way emphasized, undue suggestion may occur. However, even when the confrontation process is unduly or unnecessarily suggestive, the later identification testimony should not be excluded so long as the identification itself is reliable." See State v. White (Feb. 2, 1994), Clark App. No. 3057.
 {¶ 18} In the instant case, Detective Turner showed Neal two photographic arrays on July 2, 2004, approximately four days after the robbery occurred. As the trial *Page 7 
court noted in its decision overruling Poindexter's motion to suppress, each array consisted of six (6) photographs all of "young black males with roughly the same build and facial hair." The trial court further determined that "none of the clothing is unique enough to highlight any individual." After being shown the first array which contained the picture of Poindexter's brother, Messiah, Neal commented that one of the individuals in the array had a similar nose to that of the perpetrator, but she did not select his photo. Upon viewing the second array, Neal selected the photo of Poindexter as being that of the individual who committed the robbery. Neal testified that she was able to identify Poindexter as the perpetrator because she recognized his nose and eyes which were exposed through the cut-out section of the mask he wore during the robbery.
 {¶ 19} Other than his bare assertion, Poindexter can point to no evidence in the record which demonstrates that placing a picture of his brother in one photo array and placing a picture of himself in the second array was unduly suggestive. The photographic arrays were randomly created using the Montgomery County Sheriffs Jail Screening System. Detective Turner testified at the suppression hearing that she followed the proper procedure in showing the two random photo arrays to Neal who was able to identify Poindexter from the second array as the individual who robbed her. After a thorough review of the record, we hold that there was nothing unduly suggestive regarding the process used to identify Poindexter as the perpetrator. Thus, the trial court did not err when it overruled Poindexter's motion to suppress Neal's identification of him.
 {¶ 20} Poindexter's first assignment of error is overruled. *Page 8 
 III {¶ 21} Because Poindexter's second and fourth assignments of error are intertwined, they will be discussed together:
 {¶ 22} "APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE IN ASSISTING APPELLANT IN THIS MATTER, AND THAT LED TO HIS CONVICTIONS BECAUSE DEFENSE COUNSEL DID NOT MOTION FOR AN ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AS TO THE IDENTIFICATION EVIDENCE PRESENTED BY THE STATE AT TRIAL WAS INSUFFICIENT TO SURVIVE A CRIMINAL RULE 29 MOTION FOR ACQUITTAL."
 {¶ 23} "THE TRIAL COURT ERRED IN CONVICTING APPELLANT AS SUCH CONVICTIONS WERE NOT SUFFICIENTLY SUPPORTED BY THE EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 24} In his second assignment, Poindexter argues that he was denied effective assistance of counsel by his attorney's failure to make a Crim. R. 29 motion for acquittal at the close of the State's case. In his fourth assignment, Poindexter contends that there was insufficient evidence adduced at trial to support his conviction. He also argues that his conviction was against the manifest weight of the evidence. As the State notes in its brief, although Poindexter's assignment challenges both the weight and sufficiency of the evidence, his argument focuses solely on the sufficiency of the evidence used to convict him.
 {¶ 25} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential *Page 9 
duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, citing State v. Lytle (1976), 48 Ohio St.2d 391, 396-397,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910,98 S.Ct. 3135.
 {¶ 26} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 27} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694.
 {¶ 28} In support of his contention that his counsel was ineffective for failing to *Page 10 
make a Crim. R. 29 motion, Poindexter argues that the only evidence before the jury that he committed the robbery was the identification testimony of Neal. Poindexter also points out that there was no physical evidence collected linking him to the crime. Simply put, Poindexter asserts that the evidence adduced at trial was insufficient to support a guilty verdict, and had his counsel requested an acquittal pursuant to Crim. R. 29, the trial court would surely have sustained such a motion.
 {¶ 29} In order to establish ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonable representation and, in addition, that prejudice arose from counsel's performance. Failure to move for an acquittal under Crim. R. 29 is not ineffective assistance of counsel, where the evidence in the State's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the charged offense have been proved beyond a reasonable doubt, and that such a motion would have been fruitless. State v. Adams (August 24, 2001), Hamilton App. Nos. C-000388, C-000389, and C-000390. In ruling on a Crim. R. 29 motion for acquittal, the trial court is obligated to view the evidence in a light most favorable to the prosecution. State v. Miley (1996),114 Ohio App.3d 738, 648 N.E.2d 102, citing State v. Bridgeman (1978),55 Ohio St.2d 261, 263, 381 N.E.2d 184, 185.
 {¶ 30} In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492. As is clear from the above analysis, the standard for *Page 11 
Crim. R. 29 motion is the same as the standard used in a challenge to the sufficiency of the evidence.
 {¶ 31} A review of the record convinces us that the State's evidence identifying Poindexter as the perpetrator, which consisted of the eyewitness testimony of Neal as well as her photo array identification, was sufficient as a matter of law to sustain a conviction. Had a motion for acquittal been made by defense counsel, it would have been properly overruled. When viewed in a light most favorable to the prosecution, rational minds could have reached the conclusion that the State proved that Poindexter was the perpetrator of the charged offenses beyond a reasonable doubt. Thus, defense counsel was not ineffective for failing to make a Crim. R. 29 motion at the close of the State's case because sufficient evidence was adduced at trial to support Poindexter's conviction.
 {¶ 32} Poindexter's second and fourth assignments of error are overruled.
 IV {¶ 33} Poindexter's third assignment of error is as follows:
 {¶ 34} "THE TRIAL COURT'S SENTENCING OF APPELLANT MUST BE VACATED."
 {¶ 35} In his third assignment, Poindexter contends that pursuant toState v. Foster (2006), 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, his sentence must be vacated because the trial court made certain findings that have been found to violate his Sixth Amendment right to trial by jury. The State conceded this point in its brief and agrees with Poindexter that his sentence should be vacated and remanded for re-sentencing. *Page 12 
 {¶ 36} In its recent decision in Foster, the Ohio Supreme Court held that portions of R.C. 2929.14 are unconstitutional because they violate an accused's Sixth Amendment right to a jury trial and the principles contained in Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, and Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, by requiring a sentencing court to make certain judicial findings before imposing a non-minimum prison sentence on an offender. Foster, supra, at ¶ 83.
 {¶ 37} Thus, we reverse Poindexter's prison sentence for aggravated robbery, felonious assault, and having weapons while under disability and remand this case for a new sentencing hearing consistent withFoster's mandate. In re-sentencing Poindexter on remand, the trial court shall consider those portions of the sentencing code unaffected byFoster, and impose any sentence within the appropriate felony range.Foster at ¶ 105. Those unaffected portions of the sentencing code to be considered include the purposes of felony sentencing pursuant to R.C. § 2929.11 and the seriousness and recidivism factors pursuant to R.C. § 2929.12. State v. Mathis (2006), 109 Ohio St.3d 54, 846 N.E.2d 1,2006-Ohio-855.
 {¶ 38} Poindexter's third assignment of error is sustained.
 V {¶ 39} Poindexter's fifth assignment of error is as follows:
 {¶ 40} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN UNDULY RESTRICTING APPELLANT'S RIGHT TO CROSS-EXAMINE THE STATE'S WITNESS REGARDING A VIDEO TAPE WHERE THE WITNESS IDENTIFIED THE PERSON IN THE TAPE AS BEING THE PERSON WHO ROBBED HER IN THE *Page 13 
CASE AT BAR AND THEREBY DEPRIVED APPELLANT OF A FAIR TRIAL, AS IS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 41} In his fifth assignment, Poindexter contends that the trial court erred when it denied him the right to cross-examine Neal with respect to the contents of a video tape of a robbery at a Taco Bell restaurant which occurred at some point in time after June 29, 2004. The record indicates that after viewing the video of the Taco Bell robbery on the news, Neal informed Detective Turner that the perpetrator in that video was the same man who robbed her outside of the Bank One. Poindexter argues that the trial court mistakenly relied on the prosecutor's representations that another judge had already determined that the video tape was irrelevant, and therefore, inadmissible for the purpose of the suppression hearing and the trial. Poindexter correctly asserts that the first judge's ruling with respect to the tape was restricted to the issues litigated during the suppression hearing. The first judge did not rule on the admissibility of the video tape at trial.
 {¶ 42} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' State v. Sage (1987),31 Ohio St.3d 173, 180. Unless the trial court has clearly abused its discretion, and the defendant has been materially prejudiced thereby, a reviewing court should be slow to interfere. O'Brien v. Angley (1980),63 Ohio St.2d 159, 163." State v. Burgess (Nov. 8, 1996), Montgomery App. No. 15548. We review the trial court's decision regarding the admission or exclusion of evidence under an abuse of discretion standard of review. State v. Carter, Summit App. No. 22444, 2005-Ohio-4362. "An abuse of discretion is more than an error of *Page 14 
judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." Id. (Internal citations omitted.) "An abuse of discretion demonstrates `perversity of will, passion, prejudice, partiality, or moral delinquency.`" Id. We may not substitute our judgment for that of the trial court. Id.
 {¶ 43} The following exchange took place between the parties during trial with respect to the video tape of the Taco Bell robbery:
 {¶ 44} "Defense Counsel: On August 4th she also told you about a video; correct? Or something she saw on T.V.; correct?
 {¶ 45} "Detective Turner: Yes.
 {¶ 46} "Q: Okay. And she said that she saw the same person on — at K.F.C.-or sorry, on T.V. robbing a Taco Bell?
 {¶ 47} "A: Correct.
 {¶ 48} "Q: Okay. Did you ever get that video?
 {¶ 49} "A: No. I called the Sheriffs Office and just advised them on the information.
 {¶ 50} "Q: So you never got that video to go over that with her again?
 {¶ 51} "A: No.
 {¶ 52} "Q: Okay. So obviously — you said you didn't talk to anybody else at K.F.C. to see if there were any other possible suspects?
 {¶ 53} "A: No.
 {¶ 54} "Q: So you didn't talk to anybody at th-other K.F.C.'s; this is the only K.F.C. you were focusing on?
 {¶ 55} "The State: Your honor, may we approach? Briefly. *Page 15 
 {¶ 56} "Trial Court: Yes."
 {¶ 57} [Side Bar Conference Held as Follows:]
 {¶ 58} "The State: There's an issue here that Mr. Roberts [defense counsel] is not aware of. And I have a feeling that he may indicate that his client's telling him, not an im — improper thing to do, but that video was recovered. We viewed it with his defense attorney at the time in the presence of the Court upstairs and the implication here is that video was never co — that nobody ever looked into it.
 {¶ 59} "The Court has already looked at it and made a decision that it is completely irrelevant to this case and that there's no way to positive — possibly make an identification of that. Judge Hall made that determination so it's improper to bring that up at this point.
 {¶ 60} "Trial Court: Okay. This — this was brought up at the time of a. . .
 {¶ 61} "The State: After.
 {¶ 62} "Trial Court: After this — [Inaudible] — And was this then — [Inaudible]-
 {¶ 63} "Defense Counsel: I don't think he was.
 {¶ 64} "The State: No.
 {¶ 65} "Trial Court: Well, all right. There's a — [Inaudible] — rule at the time-[Inaudible] — she saw this on T.V.; right?
 {¶ 66} "The State: Right. Said that's the guy.
 {¶ 67} "Defense Counsel: That's the same mask and. . .
 {¶ 68} "* * *
 {¶ 69} "The State: But the Court has already made a determination that's irrelevant and it wasn't admissible at the motion to suppress and we can't bring it in *Page 16 
now and show it `cause the Court's made that ruling and it would be improper for, uh.. Defense Counsel now to bring it up and implicate that the Detective didn't do her job by not getting this `cause it's already been done, we just can't bring it up. It has nothing to do with this case.
 {¶ 70} "Defense Counsel: But they allow — they allowed Bunch to — to talk about the video; didn't they? In — in the motion to suppress?
 {¶ 71} "The State: Judge — we turned it over.
 {¶ 72} "* * *
 {¶ 73} "The State: If he wants to open the door and get in a bunch of other robberies, we'd be more than happy to.
 {¶ 74} [All Talking at Once]
 {¶ 75} "Defense Counsel: That doesn't open the door to that.
 {¶ 76} "Trial Court: Well, that's what I was gonna get into. I th — I agree with the previous Judge's ruling that it's irrelevant and — and pretty prejudicial to your guy, but if you get into it, then I think. . .
 {¶ 77} "Defense Counsel: I'll get out of it.
 {¶ 78} "Trial Court: . . . you open the door up. So, you can't — you can't have your cake and eat it too. You can't try to find that they did. . .
 {¶ 79} "Defense Counsel: Well, Judge, I think the difference would be that, uh. . . Miranda Neal saw the tape and she said, That's the guy, this is the one.'
 {¶ 80} "The State: That was well after the I.D. that she made on this case.
 {¶ 81} [All Talking at Once]
 {¶ 82} "Trial Court: How does this help? *Page 17 
 {¶ 83} "Defense Counsel: I don't know. Yeah, I'm not. . .
 {¶ 84} "* * *
 {¶ 85} "Defense Counsel: I'm not going — well, I didn't plan on tryin' to get that in, because . . .
 {¶ 86} * * *
 {¶ 87} "The State: If he goes into it, we're going to show the tape.
 {¶ 88} "* * *
 {¶ 89} "Trial Court: — [Inaudible] — and I — I'm gonna sustain the objection because I think it's not evidence of this case. We're not concerned about the robbery at the Taco Bell. The witnesses have been asked about any identification and it's just a — [Inaudible] — and it's already been ruled on by other Judges — [Inaudible]-"
 {¶ 90} In light of the above discussion, it appears that the trial court at least in part mistakenly relied upon the representations from the State that the video tape had been deemed inadmissible pursuant to a previous ruling from the judge who presided over the motion to suppress. However, it is also clear that the trial court listened to the arguments from both the State and the defense regarding the tape and made its own decision that the tape was irrelevant to the trial itself and may ultimately prove prejudicial to Poindexter's defense. Moreover, at one point during the sidebar conference, defense counsel stated that he had not planned to play the tape for the jury. Defense counsel only wanted to question Detective Turner about her handling of the tape in an effort to discredit her testimony.
 {¶ 91} In light of the foregoing, we must conclude that the trial court did not abuse its discretion in ruling the video tape inadmissible at trial. The record indicates *Page 18 
that the trial court, as well as counsel, understood that the tape could have ultimately been extremely prejudicial to Poindexter's case. Further, defense counsel was not trying to use the tape to cross-examine Neal, the lone eyewitness to the robbery at Bank One. Rather, defense counsel sought to question Detective Turner about the tape in order to discredit her testimony. The record clearly demonstrates that defense counsel never attempted to use the video tape while cross-examining Neal. In fact, the record shows that defense counsel did not want the jury to watch the tape at all. Thus, the trial court did not err by not allowing defense counsel to use the video tape of the Taco Bell robbery for cross-examination purposes.
 {¶ 92} Poindexter's fifth assignment of error is overruled.
 VI {¶ 93} Poindexter's final assignment of error is as follows:
 {¶ 94} "THE APPELLANT WAS DENIED A FAIR TRIAL AS GUARANTEED BY THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLES 1, SECTION 10 OF THE OHIO CONSTITUTION BECAUSE PROSECUTOR MISCONDUCT."
 {¶ 95} In his final assignment, Poindexter contends that he was denied a fair trial due to prosecutorial misconduct. Specifically, Poindexter argues that the State misrepresented to the trial court that the judge presiding over the motion to suppress ruled that the video tape of the Taco Bell was irrelevant, and therefore inadmissible, for the purpose of the trial, as well as the suppression hearing. As has already been stated, the first judge limited his ruling with respect to the tape's admissibility at the suppression hearing, and did not consider whether the tape would be admissible at the *Page 19 
time of trial. Poindexter asserts that the State's misrepresentations regarding the tape amounted to prosecutorial misconduct which denied him a fair trial insofar as he was disallowed from cross-examining Neal about the tape. We disagree.
 {¶ 96} Defense counsel did not object to this instance of alleged prosecutorial misconduct during trial. Thus, we must review this entire assignment under a plain error analysis. Crim. R. 52(B) allows a reviewing court to consider errors committed at trial, upon which appellant did not object, only if such errors affected the substantial rights of the appellant. A reviewing court should use the utmost caution in taking notice of plain error and should do so only if it is clear that, but for the error, the result in the trial court would have been different. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph 2 of syllabus. Notice of plain error should be taken only in exceptional circumstances and only to prevent a manifest miscarriage of justice. Id., paragraph 3 of syllabus.
 {¶ 97} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13,14-15, 470 N.E.2d 883. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940.
 {¶ 98} As we stated in the analysis of Poindexter's fifth assignment of error, defense counsel did not attempt to introduce the tape into evidence during Neal's cross-examination. The record indicates that defense counsel asked Neal what she told Detective Turner, and Neal testified that she informed the detective that she believed that the perpetrator of the Taco Bell robbery was the same man who robbed *Page 20 
her outside the Bank One on June 29, 2004. Defense counsel did not question Neal further with respect to the tape. The next time the tape was discussed was during the cross-examination of Detective Turner, when defense counsel attempted to use the tape to discredit her testimony. The record indicates that defense counsel did not wish to have the tape entered into evidence. Rather, he simply wanted to question the detective about it in order to make her look irresponsible in her handling of the tape once Neal informed her of its existence.
 {¶ 99} Although the State was clearly mistaken in its claim that the suppression hearing judge had ruled that the tape was inadmissible at trial, these actions do not rise to the level of prosecutorial misconduct. The record indicates that the trial judge ruled independently that the tape was irrelevant for the purpose of the trial because evidence of another robbery allegedly committed by Poindexter could have seriously prejudiced his case. Moreover, contrary to Poindexter's assertions, defense counsel was allowed to cross-examine Neal regarding the tape. Thus, Poindexter was not denied a fair trial by virtue of the State's mistaken statements concerning the tape.
 {¶ 100} Poindexter's final assignment of error is overruled.
 VII {¶ 101} In light of our ruling with respect to Poindexter's third assignment of error, this matter is remanded for re-sentencing in accordance with the mandate set forth in State v. Foster (2006),109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856. In all other respects, the judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur.
[1] The record demonstrates that the amount of the scheduled deposit that day was just under $1600.00. *Page 1