DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Vincent M. Pasqualucci, appeals from the decision of the Summit County Court of Common Pleas which found him guilty of felonious assault and sentenced him to two years. We affirm.
 {¶ 2} Defendant was indicted with one count of felonious assault, in violation of R.C. 2903.11(A)(1), and one count of assault, in violation of R.C. 2903.13(A). The assault charge was dropped prior to trial. A jury trial ensued on December 18, 2003. Defense counsel requested a jury instruction on the lesser included offense of assault, which was denied by the court. The jury found Defendant guilty of felonious assault and the court sentenced Defendant to two years in prison. Defendant timely appealed raising three assignments of error. For ease of discussion we will discuss the third assignment of error first.
 ASSIGNMENT OF ERROR III
"The verdict finding [Defendant] guilty of felonious assault [under R.C.] 2903.11 was against the manifest weight of the evidence."
 {¶ 3} In his third assignment of error, Defendant asserts that his conviction was against the manifest weight of the evidence. Specifically, Defendant contends that contradictions within the evidence are sufficient to render his conviction improper. We find Defendant's assertions meritless.
 {¶ 4} "[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing State v. Thompkins
(1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant maintains that his conviction is against the manifest weight of the evidence:
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
 {¶ 5} R.C. 2903.11(A)(1), the felonious assault statute, prohibits one from knowingly causing serious physical harm to another. One acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Serious physical harm includes physical harm which causes a temporary, substantial impairment. R.C. 2901.01(A)(5)(c).
 {¶ 6} Testimony at trial revealed that Defendant had lived with Wendy Cramer ("Cramer") for multiple years. Cramer and Defendant had two children together, Nick and Jesse. However, differences arose between the two, and Defendant moved out of the house sometime in June or July 2002. Defendant left a number of things in the basement of the house, including clothing, deer antlers, and various hunting and fishing equipment. Cramer had called multiple times, requesting that Defendant remove the property from her basement, but he had not done so.
 {¶ 7} The victim in this case, Robert Saunders ("Saunders"), moved in with Cramer sometime after Defendant departed. Saunders testified at trial that he was upstairs at home watching television and drinking a beer when Defendant unexpectedly drove into the home's driveway on May 4, 2003. Cramer, Nick, and Jesse were all downstairs at the home watching a separate television. Cramer answered the door when Defendant knocked. Defendant indicated that he wanted to remove some of his property from the basement, but Cramer told him that he could not do so at that time. Because Defendant would not leave, she called up the stairs for Saunders.
 {¶ 8} Saunders put on his shoes, came down the stairs, and went out onto the front porch to speak to Defendant. Like Cramer, he told Defendant that he was not welcome at the home. When Saunders turned to re-enter the home, he recalled that Defendant tried to follow him through the door. Saunders had already told Defendant he could not come in, so he pushed Defendant back away from the door. Defendant then grabbed Saunders by his shirt and pulled him out onto the porch. Defendant spun Saunders around so that his back was to the edge of the front porch. Saunders testified that Defendant said "I'm going to throw you off this f'g porch[,]" to which Saunders responded, "if I'm going, you're going with me." Defendant pushed Saunders over the front porch railing, and Saunders pulled Defendant along with him.
 {¶ 9} Saunders and Defendant fell approximately five or six feet to the ground onto some large, landscaping rocks. Defendant fell on top of Saunders, breaking Saunders' arm. Saunders testified that "[i]t just hurt like heck. I knew something was wrong when I got up. My arm was just dangling and I knew it was broke." Saunders and Defendant both got up from the ground, Saunders holding his arm and calling for an ambulance. Defendant simply turned to Saunders and began hitting him in the face and head with his right arm, which had a cast from a previous injury on it. Saunders tried unsuccessfully to stop Defendant with his uninjured arm. Defendant finally backed away from Saunders after striking him ten to twelve times with his cast, got into his car and left the home.
 {¶ 10} Cramer witnessed some of the altercation from inside the house, but admitted that she was more concerned with calling an ambulance at the time than paying very close attention to the fight. She was, however, certain that Defendant pushed or pulled Saunders off the porch. Another neighbor, Debbie Lamp ("Lamp"), also witnessed the fight. She heard the argument through her upstairs bedroom window, and raced down the stairs to her front door in time to see "[Defendant] on top of [Saunders] pushing [Saunders] over the railing. [Saunders] was bent backwards and [Defendant] was on top and they went over the railing." When Saunders tried to move away, Lamp said that Defendant tackled Saunders and started to hit him with his cast.
 {¶ 11} Defendant and Cramer's son Jesse also witnessed the fight. He was in the front yard of the house across the street when Defendant unexpectedly drove up the driveway. Jesse saw Cramer answer the front door and then leave to get Saunders. He then stated that, without any provocation by Defendant, Saunders hit and kicked Defendant. He did not believe that either man threw the other over the railing. After the fight had ended, he told Defendant, his father, to leave because he was worried that Defendant would get in trouble because of the fight.
 {¶ 12} Defendant's testimony varied greatly from the others. Defendant stated that he had previously appeared at the house unexpected, and that Saunders and Cramer always permitted him into the house to get his things. Defendant insisted that Saunders and he had a friendly relationship, and that Cramer always had Saunders deal with Defendant when he came to collect his property. On this occasion, however, Defendant testified that Saunders smelled heavily of alcohol when he came to the door. When Defendant said that he had come to gather some of his belongings, Saunders turned to go into the house, and Defendant went to follow him.
 {¶ 13} Just as Defendant took a step toward the house, Defendant turned and tried to hit Defendant in the face, just missing. Saunders then kicked Defendant. Defendant recalled that Saunders was wearing steel-toed boots, and that the kick hit him in the elbow, causing immense pain. Saunders then tackled Defendant on the porch, and both men fell over the railing, Defendant falling backward onto the rocks with Saunders on top of him. When Defendant hit the ground, he felt pain in his neck and was afraid that he had actually broken his neck. He was so angry about the incident that he, therefore, stood up and began hitting Saunders with his open hand Defendant denied hitting Saunders with his cast. Defendant also denied knowing that Saunders was injured.
 {¶ 14} Officer Brett Harvey was the first to respond to the scene. He took statements from Cramer and Lamp. He also saw Saunders at the scene before the ambulance took him to the hospital. Saunders had blood on his face and was bleeding from his right ear. Officer Harvey decided to wait to speak to Saunders later because he looked like he was going into shock due to the amount of pain.
 {¶ 15} A second police officer, Officer James Dawson, also responded to the scene in order to locate Defendant. Officer Dawson located a cell phone number for Defendant, and called Defendant only to find that he was at Barberton Hospital. Officer Dawson then responded to the hospital in order to take a statement from Defendant. Defendant told him that the fight had been mutual, and denied striking Saunders with his cast. The officer took photographs of the cast on Defendant's hand, noting some red substance which he thought was blood from the fight. Officer Dawson also noted that Defendant had no visible injuries from the fight, and stated that Defendant was at the hospital due to an old injury from a previous car accident. Defendant did not complain of any injury from the fight to Officer Dawson, and admitted that the red on his cast was Saunders' blood from the fight.
 {¶ 16} At trial, Defendant denied that Officer Dawson's statement from the hospital was accurate. He insisted that the red substance on the cast was actually pizza sauce from his job, not blood. Defendant also testified that he went to the hospital because he thought he had broken his neck in the fall during the fight. While he suffered no abrasions, cuts, or bruises from the fight, he wore a cervical collar for two to four weeks due to the pain in his neck.
 {¶ 17} Following the incident, an ambulance took Saunders to St. Thomas Hospital. The doctors treated him for a broken arm and open wounds on his face and head. His arm was immobilized for five months, and he was unable to work. "Doctor told me don't even try it. My arm snapped in half, shattered." Saunders took pain medication every day for three months, and then attended physical therapy three times a week for two months after the cast was removed.
 {¶ 18} After reviewing the evidence before the trial court, we find that the conviction for felonious assault in this case is not against the manifest weight of the evidence. While conflicting evidence was presented at trial, this court will not overturn Defendant's conviction simply because the jury chose to believe the State's witnesses. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28, quoting State v. Gilliam
(Aug. 12, 1998), 9th Dist. No. 97CA006757. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I
"The trial court erred to the prejudice of [Defendant] when it denied his motion to allow the jury to consider the lesser included offense of assault [under R.C.] 2903.13."
 {¶ 19} In his first assignment of error, Defendant argues that the trial court erred by failing to permit the jury to consider the lesser included offense of assault. Defendant states that a jury instruction on the lesser included offense was required due to the supporting evidence. We disagree.
 {¶ 20} Assault is a lesser included offense of felonious assault. State v. Cruz, 9th Dist. No. 03CA0031-M, 2003-Ohio-4782, at ¶ 21. A court is generally required to give an instruction on a lesser included offense. State v. Deem (1988),40 Ohio St.3d 205, paragraph one of the syllabus. However, where the evidence presented at trial does not support an acquittal on the greater charge and a conviction on the lesser, the court need not give a lesser included offense instruction. State v.Copley, 9th Dist. No. 03CA0028-M, 2003-Ohio-7172, at ¶ 15, citing State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
 {¶ 21} As noted above, felonious assault requires evidence that one knowingly caused serious physical harm to another. R.C.2903.11(A)(1). On the other hand, one commits assault by recklessly causing serious physical harm to another. R.C.2903.13(B). One acts recklessly when "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). The court was not required to give the lesser included offense instruction under R.C. 2903.13(B) if the evidence at trial did not support that Defendant acted recklessly, as opposed to knowingly. See Copley
at ¶ 15.
 {¶ 22} The court in the case at bar found that the evidence presented at trial did not support a conviction on the lesser included offense of assault. After reviewing the evidence, we agree. The jury could either find that Defendant knowingly engaged in the altercation or that he was an unwitting victim. Either he threw the victim off the porch, or he was thrown off the porch with limited culpability on his part. The evidence did not support a finding of assault. Accordingly, we overrule Defendant's first assignment of error.
 ASSIGNMENT OF ERROR II
"[Defendant] was denied a fair trial by reason of improper argument by the prosecutor."
 {¶ 23} In his second assignment of error, Defendant alleges that he was denied a fair trial due to improper remarks made by the prosecutor in closing argument. Defendant opines that comments made by the prosecutor during closing argument stated the prosecutor's personal opinion as to the veracity of witnesses and, thus, was impermissible. Defendant recognizes that defense counsel failed to object to the remarks at trial, but insists that plain error lies in this case. We disagree.
 {¶ 24} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, an appellate court determines if the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced. State v. Smith (1984), 14 Ohio St.3d 13, 14. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill
(1996), 75 Ohio St.3d 195, 204, citing Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 40 L.Ed.2d 431. Moreover, the defendant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza
(1994), 71 Ohio St.3d 61, 78. When a defendant fails to object to alleged prosecutorial misconduct, he waives all but plain error.State v. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659, at ¶ 45. Defendant in this case failed to object to the alleged misconduct and has, therefore, waived any claim but that of plain error. SeeState v. Joseph (1995), 73 Ohio St.3d 450, 461.
 {¶ 25} Pursuant to Crim.R. 52(B), a plain error or defect in the proceedings that affects a substantial right may be addressed by an appellate court even though it was not brought to the attention of the trial court. The error, however, must be so obvious that is should have been apparent to the trial court without an objection. State v. Kobelka (Nov. 7, 2001), 9th Dist. No. 01CA007808, at 4-5. Where plain error is alleged, the decision of the trial court will not be reversed unless the defendant established that the outcome of the trial would clearly have been different but for the alleged error. Id.
 {¶ 26} In this case, the prosecutor spoke multiple times in the first person regarding the veracity of the witnesses: "I think you realize and recognize how ridiculous that statement was[;]" "I was kind of shocked with some of the things [Defendant] said. I was shocked because I believe he was making it up as he was going along up there[;]" "I think, ladies and gentlemen, that you realize when you go through all of these things and all the differences that [Defendant] has in his testimony, you will come to a conclusion that he is not telling you the truth[;]" and "I think he believed that he was telling the truth. I don't think he was lying, but he told the truth as he knows it as he saw and as he knows it that other people have told him is the truth. I'm not sure he understood the difference there." These multiple references to what the prosecutor personally believes or thinks are generally improper. See Statev. Lott (1990), 51 Ohio St.3d 160, 166. However, in this case, Defendant has not shown that the result of the trial would clearly have been different had the prosecutor not made these comments. As noted above, the conviction was supported by the manifest weight of the evidence regardless of any comments made by the prosecutor. We, therefore, overrule Defendant's second assignment of error.
 {¶ 27} We overrule Defendant's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Batchelder, J., concur.