[Cite as *State v. Turks*, 2010-Ohio-5944.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO. 1-10-02

      v.

LLOYD D. TURKS,               O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO. 1-10-26

      v.

LLOYD D. TURKS,               O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Allen County Common Pleas Court**
**Trial Court No. CR2007 0320**

**Judgments Affirmed**

**Date of Decision:   December 6, 2010**

Case No. 1-10-02, 1-10-26

**APPEARANCES:**

*Andrew J. King* for Appellant

*Jana E. Emerick* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Lloyd D. Turks (hereinafter "Turks"), appeals the Allen County Court of Common Pleas' judgment of conviction and sentence and the trial court's denial of his motion for a new trial. We affirm.

{¶2} On or about June 14-15, 2007, Tamiko Turks (hereinafter "Tamiko"), Turks' estranged wife, was taken to St. Rita's Hospital in Lima, Ohio after sustaining a severe neck injury. (Apr. 29-30, 2008 Tr. at 26-27, 35-36, 73). Tamiko's injury left her a quadriplegic. (Id. at 37). Following an investigation, the Lima Police Department suspected that Turks caused Tamiko's injury, and that the injury was not accidental. (Id. at 95-100).

{¶3} On September 13, 2007, the Allen County Grand Jury indicted Turks on one (1) count of felonious assault in violation of R.C. 2903.11(A)(1), a second degree felony. (Doc. No. 1). Turks entered a plea of not guilty on September 21, 2007.

{¶4} On April 29-30, 2008, a jury trial was held, and Turks was found guilty. (Apr. 29-30, 2008 Tr. at 151). Turks, however, failed to return to court for

the rendering of the verdict, so the trial court entered the conviction in Turks' absence and issued a warrant for his arrest. (Id. at 147-54).

{¶5} On June 18, 2008, Turks was arrested, and, on June 25, 2008, Turks was sentenced to eight (8) years imprisonment. (Doc. Nos. 79, 81).

{¶6} On July 23, 2008, Turks filed an appeal, and this Court affirmed Turks' conviction and sentence. (Doc. Nos. 92, 109); *State v. Turks*, 3d Dist. No. 1-08-44, 2009-Ohio-1837.

{¶7} On October 30, 2009, the trial court granted Turks leave to file a delayed motion for a new trial, which Turks subsequently filed on November 20, 2009. (Doc. Nos. 116, 119). On December 10, 2009, the trial court held a hearing on the motion, but ultimately denied the motion on December 16, 2009. (Doc. Nos. 120, 127). Turks filed a notice of appeal on January 12, 2010, and the case was assigned appellate case no. 1-10-02. (Doc. No. 129). On February 26, 2010, Turks filed a motion to stay briefing, which this Court denied on March 10, 2010; however, we extended the deadline for Turks' merit brief to April 1, 2010.

{¶8} On March 2, 2010, Turks filed a "motion to vacate a void sentence and to issue a final appealable order," alleging the trial court failed to properly advise him of post-release control. (Doc. No. 140). On March 9, 2010, the trial

court held a re-sentencing hearing[1] and issued its new judgment entry of sentence. (Doc. No. 144).  On March 26, 2010, Turks filed a notice of appeal, and the case was assigned appellate case no. 1-10-26. (Doc. No. 146).  That same day, Turks filed a motion to consolidate appellate case nos. 1-10-02 and 1-10-26 for the record, briefing, and oral argument, which we granted on April 1, 2010.

{¶9}    Turks now appeals raising five assignments of error for our review.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED BY ALLOWING SEVERAL WITNESSES TO INTRODUCE HEARSAY STATEMENTS MADE BY MRS. TURKS, WHICH VIOLATED MR. TURKS' RIGHT TO CONFRONT A WITNESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION. *CRAWFORD V. WASHINGTON* (2004), 541 U.S. 36; *OHIO V. ROBERTS* (1980), 448 U.S. 56 [SIC].**

{¶10} In his first assignment of error, Turks argues that his Sixth Amendment right to confront witnesses against him was violated because the trial court allowed Detectives Marik and Stechschulte, as well as Tamiko's mother, Bertha Reeder, to testify that Tamiko told them that Turks caused her injuries by picking her up and throwing her down to the ground.  Turks argues that this

---

[1] Since Turks was originally sentenced on June 25, 2008, the trial court was only required to hold an R.C. 2929.191 resentencing hearing. *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, paragraph two of the syllabus.  It appears from the record that the trial court vacated Turks' original sentence and conducted a de novo sentencing hearing. (Mar. 9, 2010 Tr. at 3-4).  However, the trial court's failure to follow R.C. 2929.191 was harmless since the trial court afforded Turks with a completely new (de novo) sentencing hearing.

testimony was admitted in violation of the Sixth Amendment's Confrontation Clause, as explained in *Crawford v. Washington*, because Tamiko was an unavailable witness under Evid.R. 804(A)(3), and the statements were not previously subject to cross-examination. We disagree.

{¶11} The question of whether a criminal defendant's rights under the Confrontation Clause have been violated is reviewed de novo. *State v. Keith*, 3d Dist. Nos. 1-06-46, 1-06-53, 2007-Ohio-4632, ¶49, citing *United States v. Robinson* (C.A.6, 2004), 389 F.3d 582, 592. Since Turks failed to object to the testimony at trial on Confrontation Clause grounds, we review for plain error. *U.S. v. Kappell* (C.A.6, 2005), 418 F.3d 550, 554, citing *United States v. Cromer* (C.A.6, 2004), 389 F.3d 662, 672. See, also, *State v. Abner*, 2nd Dist. No. 20661, 2006-Ohio-4510, ¶51; *State v. Urbana*, 3d Dist. No. 4-06-21, 2008-Ohio-1013, ¶¶19, 35; *State v. Richardson*, 4th Dist. No. 08CA3022, 2009-Ohio-923, ¶17; *State v. Granderson* (5th Dist.), 177 Ohio App.3d 424, 2008-Ohio-3757, 894 N.E.2d 1290, ¶83; *State v. Burnham*, 7th Dist. No. 09 MA 82, 2010-Ohio-3275, ¶¶21, 23; *State v. Velez*, 9th Dist. No. 06CA008997, 2007-Ohio-5122, ¶24; *State v. J.G.*, 10th Dist. Nos. 08AP-921, 08AP-972, 2009-Ohio-2857, ¶13; *State v. Reuschling*, 11th Dist. No. 2007-A-0006, 2007-Ohio-6726, ¶14; *State v. Cappadonia*, 12th Dist. No. CA2008-11-138, 2010-Ohio-494, ¶29.

{¶12} We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum* (1990), 53 Ohio St.3d 107, 110, 559 N.E.2d 710, quoting *State v. Long* (1978) 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, citing *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.

{¶13} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: "* * * [i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." *Crawford v. Washington* (2004), 541 U.S. 36, 38, 124 S.Ct. 1354, 158 L.Ed.2d 177. In *Crawford*, the U.S. Supreme Court determined that testimonial statements by witnesses are inadmissible unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. 541 U.S. at 59. Significantly, however, the Court in *Crawford* also noted that, "* * * when the declarant appears for cross-examination at trial, the Confrontation Clause places

no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Id. at 59, fn.9 (internal citations omitted). See, also, *State v. Bryant*, 12th Dist. No. 2007-02-024, 2008-Ohio-3078, ¶49.

**{¶14}** The trial court did not commit plain error by allowing the witnesses to testify that Tamiko told them that Turks grabbed her and threw her to the ground causing her injuries. Tamiko testified at trial concerning these statements, and therefore, the Confrontation Clause placed no constraint at all on the use of her prior statements at trial. (Apr. 29-30, 2008 Tr. at 65-69); *Crawford*, 541 U.S. at 59, fn. 9; *Kappell*, 418 F.3d at 554-55; *U.S. v. Mayberry* (C.A.6, 2008), 540 F.3d 506, 516; *State v. Fown*, 5th Dist. No. 2008 CA 00157, 2009-Ohio-5141, ¶¶27-28; *State v. Sopko*, 8th Dist. No. 90743, 2009-Ohio-140, ¶19; *State v. Reinhardt*, 9th Dist. No. 08CA0012-M, 2009-Ohio-1297, ¶¶12-13; *Bryant*, 2008-Ohio-3078, at ¶49. Turks' argument that Tamiko was "unavailable" because of her lack of memory for Confrontation Clause purposes also lacks merit. As the Court of Appeals for the Fifth District noted:

> **"Previous decisions of the [United States Supreme] court, which *Crawford* neither overruled nor called into question, have explained that 'the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' *United States v. Owens* (1988), 484 U.S. 554, 558-559, 108 S.Ct. 838. See, also, *In re Kitzmiller*, Licking App. No.2006-CA-00147, 2007-Ohio-4565, ¶ 40-44.**

> **Therefore, 'a witness' inability to 'recall either the events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequences.'** *Owens* **at 558-559, adopting Justice Harlan's concurrence in** *California v. Green* **(1970), 399 U.S. 149, 188, 90 S.Ct. 1930. '[T]he traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements.'** *Id.* **at 560.'** *Id* **at paragraph 50.**

*Fown*, 2009-Ohio-5141, at ¶29. Turks was provided an *opportunity* for effective cross-examination of Tamiko—that he failed to avail himself of that opportunity for whatever reason(s) is irrelevant for Sixth Amendment purposes. Id.

**{¶15}** Therefore, Turks' first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON ASSAULT WHEN THE EVIDENCE PRESENTED AT TRIAL SUPPORTED A CONVICTION ON THE LESSER-INCLUDED OFFENSE OF ASSAULT.**

**{¶16}** In his second assignment of error, Turks argues that the trial court erred by failing to instruct the jury on the lesser-included offense of assault, because the evidence established that he recklessly, and not knowingly, caused Tamiko's injuries. We disagree.

**{¶17}** As an initial matter, we note that Turks failed to request a jury instruction on any lesser-included offense or object to the jury instructions on this basis at trial, and therefore, he has waived all but plain error on appeal. (Apr. 29-

30, 2008 Tr. at 119, 145-46); *State v. Black* (1978), 54 Ohio St.2d 304, 310, 376 N.E.2d 948, citing *State v. Williams* (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364; Crim.R. 30(A). See, also, *State v. Williams*, 3d Dist. No. 1-01-63, 2002-Ohio-3623, ¶41; *State v. Druckenmiller* (Jan. 25, 1991), 3d Dist. No. 3-89-30, at *4.

**{¶18}** To determine whether a criminal defendant was entitled to a jury instruction (charge) on a lesser included offense requires a two-step analysis. *State v. Davis* (1983), 6 Ohio St.3d 91, 95, 451 N.E.2d 772; *State v. Kidder* (1987), 32 Ohio St.3d 279, 281, 513 N.E.2d 311. See, also, *State v. Mills* (Nov. 1, 1990), 3d Dist. No. 1-89-45. First, the reviewing court must determine whether the one offense is, in fact, a lesser included offense of the other offense. An offense is a lesser included offense if: (1) one offense carries a greater penalty than the other; (2) some element of the greater offense is not required to prove commission of the lesser offense; and (3) the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶26 (clarifying the three-part test set forth in *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294). Second, the reviewing court must determine whether the trial court was obligated to give a jury instruction on the lesser included offense under the specific facts of the case. *Davis*, 6 Ohio St.2d at 95-96, citing *State v. Wilkins* (1980), 64 Ohio St.2d 382, 387, 415 N.E.2d 303. "[A] charge on the lesser

included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." *State v. Thomas* (1988), 40 Ohio St.3d 213, 216, 533 N.E.2d 286, citing *Kidder*, 32 Ohio St.3d at 281; *Davis*, 6 Ohio St.2d 91; *Wilkins*, 64 Ohio St.2d 382.

{¶19} Therefore, we must first decide whether an assault[2] under R.C. 2903.13(B) is a lesser included offense of a felonious assault under R.C. 2903.11(A)(1). The latter is codified in R.C. 2903.11, which provides, in relevant part: "[n]o person shall *knowingly* * * * [c]ause serious physical harm to another * * *." R.C. 2903.11(A)(1) (emphasis added). The former is codified in R.C. 2903.13(B), which provides, in pertinent part: "[n]o person shall *recklessly* cause serious physical harm to another * * *." R.C. 2903.13(B) (emphasis added).

{¶20} In *State v. Ellis*, this Court held that an assault under R.C. 2903.13(B) was *not* a lesser included offense of a felonious assault under R.C. 2903.11(A)(1). (Nov. 14, 1985), 3d Dist No. 1-84-37. Our analysis in *Ellis* focused on whether one could commit the latter without also committing the former. Id. at *1, citing *Wilkins*, 64 Ohio St.2d at 384. After examining the two statutes, we acknowledged that "the two crimes differ only in that [felonious

---

[2] This offense has also been referred to as "misdemeanor assault," since a violation of the statute is usually a first degree misdemeanor, or "simple assault." *State v. Hartman* (1998), 130 Ohio App.3d 645, 646-47, 720 N.E.2d 971 ("misdemeanor assault"); R.C. 2903.13(C); *State v. Fuller*, 2nd Dist. No. 20658, 2005-Ohio-3696, ¶11 ("simple assault"); *State v. Ellis* (Nov. 14, 1985), 3d Dist. No. 1-84-37 ("simple assault").

- 10 -

assault] requires proof of the mental state of culpability of 'knowingly' whereas [assault] requires proof of the mental culpability of 'recklessly.'" Id. Next, we set forth the definitions of "knowingly" and "recklessly" as statutorily defined in R.C. 2901.22(B) and (C) and concluded:

> **It is apparent from these two definitions or characterizations that the mental state of recklessness involves indifference coupled with perverseness not present in the mental state of knowingly. It follows that contrary to the second requirement hereinbefore quoted from *State v. Wilkins, supra,* the offense of felonious assault proscribed by R.C. 2903.11(A)(1) can be committed without the offense of assault proscribed by R.C. 2903.13(B) also being committed. For such reason, without any other, the latter offense is not a lesser included offense of the former, and the trial court here did not commit error in not charging the jury on the latter offense.**

Id. Therefore, if we continue to follow *Ellis*, the trial court sub judice was not required to instruct the jury on assault since assault under R.C. 2903.13(B) is not a lesser included offense of felonious assault under R.C. 2903.11(A)(1). So, we must now decide whether *Ellis* should continue to be controlling precedent under the doctrine of stare decisis.

**{¶21}** Stare decisis requires a court to uphold its prior decision where time has vindicated the logic utilized to render the holding and the rules of law stated in the earlier case are sound. *Scott v. News Herald* (1986), 25 Ohio St.3d 243, 249, 496 N.E.2d 699, citing *Hall v. Rosen* (1977), 50 Ohio St.2d 135, 138, 363 N.E.2d 725. Nevertheless, the doctrine of stare decisis is a principle of policy rather than

an inexorable command or mechanical formula of adherence to the latest decision. *Payne v. U.S.* (1991), 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720. However, "'any departure from the doctrine of stare decisis demands special justification.'" *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶44, quoting *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 120, 752 N.E.2d 962. "Special justification" exists when: "(1) the decision was wrongly decided at [the] time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." *Galatis*, 2003-Ohio-5849, at ¶48. See, also, *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶134 (noting *Galatis* test as applicable test for overruling prior precedent); *Allied Holdings, Inc. v. Meade*, 3d Dist. No. 8-06-13, 2006-Ohio-6682, ¶14 (applying same). Finally, we note that "an appellate court 'not only has the right, but is entrusted with the duty to examine its former decisions and, when reconciliation is impossible, to discard its former errors.'" *State v. Certain*, 180 Ohio App.3d 457, 2009-Ohio-148, 905 N.E.2d 1259, ¶10, quoting *State v. Burton*, 10th Dist. No. 06AP-690, 2007-Ohio-1941, ¶22, quoting *Galatis*, 2003-Ohio-5849, at ¶44.

{¶22} Special justification exists to overrule our prior decision in *Ellis*. First, changes in the lesser included offense test since our decision in *Ellis* no

longer justify our continued adherence to the decision. Our decision in *Ellis* relied upon the Ohio Supreme Court's lesser included offense test in *Wilkins* (1980), 64 Ohio St.2d 382. In relevant part, the second prong of *Wilkins'* test—known as the "statutory-elements test"—provided that: "the offense of the greater degree cannot be committed without the offense of the lesser degree also being committed." 64 Ohio St.2d at 384. Six years later, the Ohio Supreme Court released *State v. Rohdes*, wherein it found that the evidence presented at trial was "instrumental" to whether involuntary manslaughter by aggravated menacing was a lesser included offense to murder. (1986), 23 Ohio St.3d 225, 227, 492 N.E.2d 430 ("The statutory elements reasonably deemed to be established in the context of the evidence of a particular case are instrumental to any analysis of lesser included offenses * * * a cold comparison of the statutory elements to determine whether they always coincide is irrelevant.").

{¶23} The following year, the Ohio Supreme Court admitted that its decision in *Rohdes* "did tend to cloud the picture of this area of the law," and that its analysis was flawed because "[t]he underlying facts, *i.e.,* those related to the aggravated menacing charge, were prematurely considered in determining whether the murder could have been committed without also committing involuntary manslaughter." *Kidder* (1987), 32 Ohio St.3d at 280, 282. The Court in *Kidder* further admitted that its analysis in *Rohdes* "was contrary to [its] longstanding rule

- 13 -

that the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense." Id. at 282. The Court explained that "the evidence in *Rohdes* concerning the underlying misdemeanor became relevant in determining whether the jury should have been charged on the lesser offense." Id. The Court thereafter modified the second prong of *Wilkins*' lesser included offense test as follows: "the offense of the greater degree cannot, *as statutorily defined*, *ever* be committed without the offense of the lesser degree, *as statutorily defined*, also being committed." Id. (modifications emphasized).

{¶24} Just one year later, the Ohio Supreme Court slightly modified the lesser included offense test in *State v. Deem* to distinguish between lesser included offenses and inferior degree offenses, but, pertinent here, the Court maintained *Kidders*' modifications to the second prong of *Wilkins*' test. (1988), 40 Ohio St.3d at 209. Thereafter, the lesser included offense test became known as the "*Deem* test" and remained unmodified until 2008 when the Court decided *State v. Smith*, 117 Ohio St.3d 447, 2008-Ohio-1260, 884 N.E.2d 595. See, e.g., *Thomas*, 40 Ohio St.3d at 215; *State v. Carter* (2000), 89 Ohio St.3d 593, 600, 734 N.E.2d 345; *State v. Barnes* (2002), 94 Ohio St.3d 21, 25-26, 759 N.E.2d 1240; *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶10 (all applying the "*Deem* test"). The Court in *Smith* held that: when a statute sets forth mutually

- 14 -

exclusive ways of committing the greater offense (e.g., where one element of the offense can be satisfied by proving either that the defendant actually committed another offense or attempted to commit it), a court is required to apply the second part of the *Deem* test separately to each alternate method of committing the greater offense. 2008-Ohio-1260, paragraph three of the syllabus.

{¶25} The Ohio Supreme Court revisited the *Deem* test most recently in *State v. Evans*, 2009-Ohio-2974. Although the Court in *Evans* rejected the State's invitation to modify the second part of the *Deem* test to consider the specific facts and circumstances of each case, it did note:

> **This test is not a word game to be performed by rote by matching the words chosen by the legislature to define criminal offenses. Some offenses, such as aggravated murder and murder, lend themselves to such a simple matching test; others do not. * * * We would also note that the elements of the offenses are 'matched' only in part (iii) of the test to determine if 'some element' of the greater offense is not found in the lesser offense. The proper overall focus is on the nature and circumstances of the offenses as defined, rather than on the precise words used to define them." *State v. Thomas*, 40 Ohio St.3d 213 at 216-217, 533 N.E.2d 286. Thus, the test does not require identical language to define the two offenses, but focuses upon whether the words used in the statute defining the greater offense will put the offender on notice that an indictment for that offense could also result in the prosecution of the lesser included offense.**

Id., at ¶¶11, 13, 22. Similarly, the Court rejected the defendant's argument that a person could conceivably indicate possession of a deadly weapon without implying a threat to inflict physical harm as "implausible examples * * * that

'lapse into the strict textual comparison,'" which the Court had previously rejected in its analogous cases determining whether offenses are allied offenses of similar import. Id. at ¶24. The Court explained as follows:

> **Despite making the statement to Stewart "I have a gun" as he tried to take her purse, Evans now argues that a person can indicate possession of a deadly weapon without implying a threat to inflict physical harm, for example, by purchasing a hunting knife in a hardware or sporting goods store as he simultaneously shoplifts a bag of nails by placing them in his pocket. This argument is not well taken. In *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, ¶24, we rejected similarly implausible examples advanced in the context of an allied offense analysis, stating that they "lapse into the strict textual comparison" that this court has previously rejected. Having previously rejected such strict textual comparison in the context of the *Deem* lesser included offense analysis, emphasizing that a court should focus "on the nature and circumstances of the offenses as defined, rather than on the precise words used to define them," we now reject the implausible scenario advanced by Evans in this case. *Thomas*, 40 Ohio St.3d at 217.**
>
> ***Moreover, to ensure that such implausible scenarios will not derail a proper lesser included offense analysis, we further clarify the second part of the Deem test to delete the word "ever."*** **This clarification does not modify the *Deem* test, but rather eliminates the implausible scenarios advanced by parties to suggest the remote possibility that one offense could conceivably be committed without the other also being committed. *Deem* requires a comparison of the elements of the respective offenses in the abstract to determine whether one element is the functional equivalent of the other. If so, and if the other parts of the test are met, one offense is a lesser included offense of the other.**

Id. at ¶¶24-25 (emphasis added). Therefore, the second part[3] of the *Deem* test (formerly *Wilkins* and *Kidder* tests) now provides that: "the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." Id. at paragraph two of the syllabus.

**{¶26}** In light of the forgoing, we conclude that our cursory analysis in *Ellis* suggests an application of the type of 'strict textual comparison' that the Ohio Supreme Court has more recently rejected in *Evans*, 2009-Ohio-2974, at ¶24. After reviewing the statutory elements, we now conclude that a felonious assault in violation of R.C. 2903.11(A)(1) cannot be committed without the lesser offense of assault in violation of R.C. 2903.13(B). Id. at ¶¶24-25; paragraph two of the syllabus. Second, in addition to the modifications to the lesser included offense test, the vast majority of other districts have already reached this conclusion. *State v. Hartman* (1st Dist., 1988), 130 Ohio App.3d 645, 647, 720 N.E.2d 971; *State v. Colston* (Dec. 17, 1993), 2nd Dist. No. 13599, at *9; *State v. Wong* (4th Dist., 1994), 95 Ohio App.3d 39, 53, 641 N.E.2d 1137, fn. 5; *State v. Owens*, 5th Dist. No. 2004-CA-87, 2005-Ohio-4402, ¶41; *State v. Walker* (Apr. 17, 1998), 6th Dist. No. S-97-019, at *2; *State v. Bennett*, 7th Dist. No. 04-MA-184, 2006-Ohio-3566, at ¶31; *State v. McPherson*, 8th Dist. No. 92481, 2010-Ohio-64, ¶7; *State v.*

---

[3] We note that the Ohio Supreme Court in *Evans* changed the order of the parts of the *Deem* test. Under the *Deem* test, this new formulation is the second part, but under *Evans* it is the third part of the lesser included offense test. *Evans*, 2009-Ohio-2974, at paragraph two of the syllabus.

*Pasqualucci*, 9th Dist. No. 21905, 2004-Ohio-4876, ¶20; *State v. Jackson* (Dec. 8, 1994), 10th Dist. No. 94APA04-531, at *4; *State v. Krug*, 11th Dist. No. 2008-L-085, 2009-Ohio-3815, ¶93. Third, we find that our decision in *Ellis* defies practical workability, and that abandoning our precedent would not create an undue hardship. *Galatis*, 2003-Ohio-5849, at ¶48. In fact, we have not found one single case citing *Ellis*, even though it was decided almost twenty-five (25) years ago. For all these reasons, *Ellis* is overruled.

{¶27} We now join the majority of appellate districts and hold that an assault in violation of R.C. 2903.13(B) is a lesser included offense of a felonious assault in violation of R.C. 2903.11(A)(1).

{¶28} Our conclusion that an assault in violation of R.C. 2903.13(B) is a lesser included offense of a felonious assault in violation of R.C. 2903.11(A)(1), however, does not end our analysis of Turks' assignment of error. Next, we must determine whether the trial court was obligated to give a jury instruction on the lesser included offense under the specific facts of the case. *Davis*, 6 Ohio St.2d at 95-96, citing *Wilkins*, 64 Ohio St.2d at 387. "[A] charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." *Thomas*, 40 Ohio St.3d at 216, citing *Kidder*, 32 Ohio St.3d at 281; *Davis*, 6 Ohio St.2d 91; *Wilkins*, 64 Ohio St.2d 382.

{¶29} The evidence at trial did not reasonably support both an acquittal on felonious assault and a conviction on assault. We are familiar with the facts of this case. At trial, Tamiko's mother, Bertha Reeder, testified that she talked with Tamiko about what happened the night of the incident, and Tamiko told her that: Turks grabbed her from behind when she was running away from him, held her arms back, and picked her up and threw her down to the ground. (Apr. 29-30, 2008 Tr. at 38, 50-51). Likewise, Detective Stechschulte testified that Tamiko told him "she was running from the house that Lloyd Turks had grabbed her from behind and placed his hand on the back of her neck and his other hand on the small of her back and flipped her upside down and dropped her on her neck." (Id. at 104-05). As a result, Tamiko was severely injured and is now a quadriplegic. (Id. at 37). Additionally, Tamiko feared that Turks might hurt her since she was ending their marriage. (Id. at 79-88). As such, the trial court did not commit plain error by failing to instruct the jury on the lesser included offense of assault since the evidence did not reasonably support such an instruction.

{¶30} Furthermore, Turks has consistently denied that he caused Tamiko's injuries. Shortly after Tamiko was hospitalized, Turks told Officer Niedemire that Tamiko was injured when: she was wrestling in the backyard with a cousin, whose name he didn't know; she had an asthma attack; she walked up onto the back porch of the residence and sat on the top rail; he was trying to talk to her and she

fell off the railing. (Id. at 74). This was the same explanation that Turks tried to give to Tamiko shortly after her injuries, which she rejected. (Id. at 69-70). At trial, Turks argued: "as a result of the evidence * * * it's absolutely impossible, absolutely impossible, that [he] could have been involved in this," and in his prior appeal Turks argued that the State failed to show he caused Tamiko's injuries. (Id. at 24); *Turks*, 2009-Ohio-1837, at ¶8. Therefore, we also cannot conclude that the trial court committed plain error by failing to instruct the jury on the lesser included offense of assault in light of Turks' consistent defense of denial.

{¶31} Turks' second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED BY NOT GRANTING TURKS' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.**

{¶32} In his third assignment of error, Turks argues that the trial court erred by denying his motion for a new trial based upon newly discovered evidence. Specifically, Turks argues that the newly discovered evidence he offered—Tamiko's newly recovered memory of the cause of her injuries—meets the six factors set forth in *State v. Hawkins* (1993), 66 Ohio St.3d 339, 612 N.E.2d 1227. We disagree.

{¶33} "'To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the

new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.'" *Hawkins*, 66 Ohio St.3d at 350, quoting *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, at the syllabus.

**{¶34}** An appellate court reviews a trial court's determination of a motion for a new trial based on newly discovered evidence under an abuse of discretion standard. *Hawkins*, 66 Ohio St.3d at 350; *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus; *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶85. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶35}** Turks attached to his motion for a new trial an affidavit purportedly from Tamiko wherein she averred that:

> **Between June 14-15, 2007, at the home of Angela Johnson and Keith Durr, I was injured through my own fault. Lloyd D. Turks did not in any way cause my injuries, nor did he induce me to fall which resulted in my paralyzation [sic]. My mother, Bertha Reeder, blamed Mr. Turks because she was angry, and did not like him. She felt he was responsible for all of my problems. Thus she told the police that he had picked me up and threw me. This never occurred. At his trial I testified to**

**what my mother told me because at that time I had no recollection of the incident myself. However, after much rehabilitative therapy and time, I have specifically remembered what happened that day and I fell because I was enraged and out of control. It was my fault alone, and I am very sorry for the statements I made to the police, and the testimony set forth in court. It was inaccurate and completely misleading. I hold myself responsible for Mr. Turks [sic] conviction.**

(Doc. No. 119, attached); (State's Ex. 1); (D's Ex. A). At the motion hearing, Tamiko testified that Turks provided her with this affidavit, and her cousin signed it on her behalf while no one else was present. (Dec. 10, 2009 Tr. at 12-14). Tamiko further testified that the affidavit was "true except for the part, the one part right there at the top, where it says that I was injured through my own fault." (Id. at 17). Tamiko testified at the hearing concerning her injuries as follows:

**A: I was wrestling around with Keith and then after me and Keith got done wrestling then my cousin, John, came in and me and him was talking and then me and him got to wrestling 'cause he wanted me to go outside and talk to Lloyd [Turks].**
**Q: Did you go outside?**
**A: Yes.**
**Q: And do you remember talking to him at all? Talking to Lloyd. Let me ask the question again. Do you remember talking to --**
**A: When I went outside I was out there for a few minutes. It wasn't long. Maybe a few minutes. But I don't know what we talked about or what was said. I just got annoyed and took off running.**
**Q: So, you don't remember in your conversation with Lloyd him saying anything that frightened you or made you feel afraid?**
**A: No.**
**Q: What's the next thing you remember after you took off running?**

**A:** Him grabbing me and falling.
**Q:** Do you remember where he grabbed you?
**A:** On my shirt.
**Q:** And do you remember him grabbing you on your shirt and then – I'm sorry – what did you say was the next thing you remember after that?
**A:** Me falling.
**\* \* \***
**Q:** Now, I believe it came out in the trial that you and Mr. Turks, well, there was some testimony that you guys had had some disagreements and some fights like that in the past. Did that happen? Is that accurate?
**A:** Yes.
**Q:** So, do you recall the night you were arguing? Were you at all afraid at that point that he was going to hurt you? Do you recall if you had that feeling at all?
**A:** Maybe. Probably. That's why I probably took off running.

(Id. at 8-11).

**{¶36}** After viewing the evidence presented at the hearing, we cannot conclude that the trial court abused its discretion by denying the motion for a new trial. The evidence presented does not disclose a strong probability that it will change the result if a new trial is granted and tends to merely impeach or contradict the former evidence. *Hawkins*, 66 Ohio St.3d at 350, quoting *Petro*, 148 Ohio St. 505, at the syllabus. To begin with, Tamiko discredited the affidavit's core statement of the newly discovered evidence—that the injury was her own fault. (Dec. 10, 2009 Tr. at 17). Furthermore, Tamiko's credibility both now and at trial was questionable, considering that Tamiko originally told three (3) different individuals that Turks grabbed her and threw her to the ground, and then,

suddenly could not remember what happened to her when she testified at trial. There was also testimony presented at the original trial that Tamiko had refused to press charges against Turks for other acts of domestic violence he had previously committed against her. Given these circumstances, it is unlikely the result of the trial would be different with Tamiko's newly regained memory. Furthermore, this new evidence merely tends to impeach or contradicts the testimony concerning what Tamiko originally said was the cause of her injuries. Therefore, we cannot find that the trial court abused its discretion by denying the motion for a new trial.

{¶37} Turks' third assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. IV

**TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION FOR FAILING TO OBJECT TO THE HEARSAY TESTIMONY OF BERTHA REEDER, FOR NOT REQUESTING THE COURT INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF ASSAULT, AND FOR FAILING TO OBJECT TO THE VIOLATION OF TURKS' RIGHT OF CONFRONTATION.** *UNITED STATE V. CRONIC* **(1984), 466 U.S. 648;** *STRICKLAND V. WASHINGTON* **(1984), 466 U.S. 668.**

{¶38} In his fourth assignment of error, Turks alleges that he was denied effective assistance of counsel because trial counsel failed to object to hearsay testimony, failed to request a lesser included instruction, and failed to object to the violation of his Confrontation Clause rights. We disagree.

{¶39} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole* (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶40} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. See *State v. Bradley* (1989), 42 Ohio St. 3d 136, 141-42, 538 N.E.2d 373, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. at 691. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Bradley*, 42 Ohio St.3d at 142; *Strickland*, 466 U.S. at 694.

**{¶41}** Since we have already determined that Turks' rights under the Confrontation Clause were not violated, and the trial court did not err by failing to instruct the jury on the lesser included offense of assault, we cannot find that trial counsel was ineffective on these alleged grounds.

**{¶42}** Additionally, trial counsel's failure to make objections, alone, does not establish ineffective assistance of counsel, because this decision is generally viewed as trial strategy. *State v. Conway* (2006), 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶103; *State v. McKinney*, 11th Dist. No. 2007-T-0004, 2008-Ohio-3256, ¶191, citing *State v. Hunt* (1984), 20 Ohio App.3d 310, 311, 486 N.E.2d 108; *State v. Gumm* (1995), 73 Ohio St.3d 413, 428, 653 N.E.2d 253. The record here reveals that Tamiko called defense counsel Thursday, Friday, and Monday before trial and informed defense counsel that she could not remember what happened the night of the incident. (April 29-30, 2007 Tr. at 66). Tamiko specifically informed defense counsel before trial that she probably told her mother that Turks chased her off the porch, picked her up, and threw her down, but that she was not sure that was true when she made the statement. (Id. at 65-66). Accordingly, trial counsel's failure to object to the admission of Tamiko's hearsay statements could have been a matter of trial strategy, because trial counsel

was aware before trial that Tamiko would testify and explain these statements away. Since it was a matter of trial strategy, counsel's decision not to object to the hearsay statements cannot establish ineffective assistance. *Carter*, 72 Ohio St.3d at 558.

{¶43} Turks' fourth assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. V**

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN SENTENCING TURKS TO THE MAXIMUM SENTENCE BY FINDING HE SHOWED NO REMORSE; BY NOT CONSIDERING REQUEST FOR LENIENCY FROM THE VICTIM; BY FINDING THE MARTIAL [SIC] RELATIONSHIP FACILITATED THE OFFENSE; AND THAT HIS SENTENCE WOULD NOT BURDEN STATE RESOURCES.**

{¶44} In his fifth and final assignment of error, Turks argues that the trial court abused its discretion by sentencing him to the maximum term of eight (8) years imprisonment. We disagree.

{¶45} A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record; the sentencing statutes' procedure was not followed or there was not a sufficient basis for the imposition of a prison term; or that the

sentence is contrary to law.[4] *State v. Ramos*, 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶23 (the clear and convincing evidence standard of review set forth under R.C. 2953.08(G)(2) remains viable with respect to those cases appealed under the applicable provisions of R.C. 2953.08(A), (B), and (C) * * *); *State v. Rhodes*, 12th Dist. No. CA2005-10-426, 2006-Ohio-2401, ¶4; *State v. Tyson*, 3d Dist. Nos. 1-04-38; 1-04-39, 2005-Ohio-1082, ¶19, citing R.C. 2953.08(G). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; *State v. Boshko* (2000), 139 Ohio App.3d 827, 835, 745 N.E.2d 1111. An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's likelihood of recidivism and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3d Dist. No. 2-04-08, 2004-Ohio-4809, ¶16, quoting *State v. Jones* (2001), 93 Ohio St.3d 391, 400, 754 N.E.2d 1252.

**{¶46}** As an initial matter, Turks concedes that the sentence of eight (8) years was not contrary to law. (Appellant's Brief at 23). Rather, Turks argues that

---

[4] This Court notes that the Ohio Supreme Court has recently released a plurality opinion on the issue of whether a clear and convincing standard or an abuse of discretion standard is proper for reviewing felony sentences under R.C. 2953.08(G). *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. Although this Court utilized our precedential clear and convincing standard, affirmed and adopted by *Kalish*'s three dissenting Justices, we would have concluded that Turks' sentence was proper under the *Kalish* plurality's two-step approach as well.

a maximum sentence was not supported by the record, especially in light of the fact that he expressed genuine remorse and the victim, Tamiko, asked for leniency. We disagree.

{¶47} At the resentencing hearing, Turks stated, "* * * I'd like to say I'm sorry for everything, what happened, even though I wasn't the cause. I'm just sorry I was there. I apologize to everybody that's here for me, and here against me. It was just a whole big mess and I apologize for everything. * * *." (Mar. 9, 2010 Tr. at 8). After hearing Turks' statement, the trial court found that Turks had not expressed genuine remorse. (Id. at 11). The trial court stated, in pertinent part:

> **I understand his position that he's not responsible and is not accepting any responsibility for that. That's his right to do that. I'm certainly not making a finding in violation of his right to have that position because I understand his position on appeal and he may want to appeal further. But I'm simply making it based upon everything that's been presented here, the history of the case and the facts, that I'm finding that the defendant doesn't show any genuine remorse for the offense.**

Based upon Turks' remarks and the fact that the trial court sits in the best position to hear his voice inflections and view his demeanor in order to determine whether he had genuine remorse for his actions, we cannot conclude that the trial court erred in its finding. *State v. Alberty* (Mar. 28, 2000), 3d Dist. No. 1-99-84, at *2, citing *State v. Kershaw* (1999), 132 Ohio App.3d 243, 724 N.E.2d 1176. See, also, *State v. Majercik*, 11th Dist. No. 2009-L-066, 2010-Ohio-711, ¶25.

**{¶48}** We are also not persuaded that the trial court abused its discretion in sentencing Turks to the maximum sentence because the victim, Tamiko, asked the trial court to have leniency upon him. To begin with, the trial court *did* consider Tamiko's plea of leniency at the resentencing hearing. (Mar. 9, 2010 Tr. at 9). Furthermore, the State indicated on the record at the original sentencing that the police had been called and had filed written reports some fourteen (14) times concerning Turks' previous acts of domestic violence against Tamiko. (June 25, 2008 Tr. at 3-4). At trial, Patrolman Niedemire testified that Tamiko never followed through with the domestic violence charges against Turks, even though he warned her that the violence could escalate. (Apr. 29-30, 2008 Tr. at 75-76). Given this past history, we cannot find that the trial court abused its discretion in sentencing Turks because of Tamiko's plea for leniency. Furthermore, we note that the trial court was within its discretion to consider these past uncharged acts for purposes of sentencing Turks. See, e.g., *State v. Cooey* (1989), 46 Ohio St.3d 20, 35, 544 N.E.2d 895.

**{¶49}** Finally, Turks argues that the trial court abused its discretion in sentencing him because it erroneously found that his relationship with Tamiko facilitated the offense and erroneously found that the maximum sentence did not place an unnecessary burden on the State's resources. We disagree. The evidence at trial established that Turks was Tamiko's husband and, therefore, had readily

available access to her within that relationship of trust to commit the present offense. (Apr. 29-30, 2008 Tr. at 25, 56, 79, 99). Furthermore, although the trial court must consider the financial burden on the State, the trial court is not required to elevate resource conservation above the seriousness and recidivism factors. *State v. Fox* (Mar. 6, 2001), 3d Dist. No. 16-2000-17, at *4. The trial court found that a prison sentence was consistent with the purposes and principles of sentencing, especially in light of the fact that Tamiko suffered serious physical harm. (Mar. 9, 2010 Tr. at 11). We find no abuse of the trial court's discretion in this regard.

{¶50} After reviewing the entire record, we cannot conclude that the trial court abused its discretion by sentencing Turks to the maximum term of eight (8) years imprisonment.

{¶51} Turks' fifth assignment of error is, therefore, overruled.

{¶52} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**ROGERS, J., concurs.**

**/jlr**

**WILLAMOWSKI, P.J. Concurring Separately.**

{¶55} I concur fully with the majority opinion, however write separately to emphasize that the appropriate standard of review was applied. The standard of review for sentences was set forth in the plurality opinion of *Kalish*, supra. In *Kalish*, four panel members noted that R.C. 2953.08(G) requires that appellate courts require appellants to meet a clearly and convincingly contrary to law standard of review when reviewing a sentence.[5] For example, if the sentencing court imposed consecutive sentences, as in this case, the standard of review would be whether appellant has shown that the sentence was clearly and convincingly contrary to law. However, if the appeal is based upon the proper application of the factors in R.C. 2929.12, four panel members in *Kalish* would require review using an abuse of discretion standard as specifically set forth in R.C 2929.12.[6]

{¶56} In his assignments of error, Turks alleges that the trial court erred by sentencing him to maximum consecutive sentences under R.C 2929.14. This portion of the appeal is reviewed under a clearly and convincingly contrary to law standard. However, Turks also alleges that the trial court erred in applying the factors set forth in R.C. 2929.12(B) in that he alleges that he expressed genuine remorse. Since R.C. 2929.12(B) specifically grants the trial court discretion to

---

[5]  Justices Pfeifer, Lundberg Stratton, Lanzinger, and Judge Willamowski, sitting by assignment, all reached this conclusion.
[6]  Justices O'Connor, Moyer, O'Donnell, and Judge Willamowski, sitting by assignment, concurred in this position, although the first three would use both standards of review in all cases.

apply the factors, the application of the factors must be reviewed under an abuse of discretion standard. The majority properly concluded that the trial court did not abuse its discretion in determining that Turks did not show any genuine remorse. Thus, I concur with the opinion of the majority.