JUDGMENT: VACATED
{¶ 1} Appellant Daniel Casino appeals his conviction and sentence. He assigns the following errors for our review:
 "I. The failure to instruct the jury on the lesser included offense of trespass denied Daniel Casino his federal and state constitutional rights to trial by jury and due process guaranteed by the Sixth and Fourteenth Amendments as well as by Article I, Section 10 of the Ohio Constitution."
 "II. The defendant was denied federal and state due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when he was convicted on evidence that was insufficient as a matter of law to sustain the conviction for the offense of burglary."
 "III. The sentence must be vacated because the trial court failed to fully advise Mr. Casino about post-release control at sentencing."
 "IV. The trial court erroneously imposed a sentence that exceeded the minimum and concurrent terms of imprisonment on the basis of findings made by the trial judge pursuant to a facially unconstitutional statutory sentencing scheme."
 {¶ 2} Having reviewed the record and pertinent law, we vacate Casino's conviction. The apposite facts follow.
 {¶ 3} On November 14, 2005, the Cuyahoga County Grand Jury indicted Casino for one count of burglary, a felony of the second degree. After extensive pre trial conferences, the matter proceeded to a jury trial, which commenced on December 14, 2005.
 Jury Trial {¶ 4} Shauntee McCoy, Tinika Tolbert, and their three children lived on the second floor of a duplex located in Garfield Heights, Ohio. Mildred Holcomb lived on the first floor of the duplex. At approximately 6:30 a.m., McCoy awoke when he heard a sound coming from the kitchen. The sound was similar to someone counting change. He thought it was his ten-year old son getting ready for school. When McCoy went to check on the noise, the kitchen was empty, but he discovered a belt, tennis shoes, identification card, and an address book on the counter.
 {¶ 5} At approximately the same time, Ms. Tolbert woke their ten-year old son to get him ready for school. On her way to the kitchen, Ms. Tolbert walked past the bathroom and noticed it was closed. As she joined McCoy in the kitchen, the bathroom door opened. Casino, who appeared disoriented and intoxicated, walked into the hallway wearing only a pair of gym shorts. Casino turned in the direction of a bedroom, but when the ten-year old son screamed at him, Casino turned around and walked towards the kitchen.
 {¶ 6} Terrified at seeing a stranger in the house, Ms. Tolbert screamed, jumped over the table, and ran out of the kitchen. Casino attempted to gather his belongings, but McCoy led him out the front door and down the steps without incident. Once outside, Casino ran down the street.
 {¶ 7} McCoy immediately called the police. Based on the identification card and address book Casino left behind, the police were able to locate him shortly thereafter.
 {¶ 8} Officer Ronald Dodge testified that he recognized the name of the person whose telephone number was in the address book. He relayed the telephone number to police dispatch, which cross-referenced the number and provided an address.
 {¶ 9} The officers went to the address that dispatch had provided. The homeowner informed them that Casino had been living in the basement, but was supposed to have moved out the previous day. After checking the basement, the homeowner reported that Casino was there sleeping. The officers entered the basement, found Casino sleeping, and arrested him.
 {¶ 10} The day after Casino was arrested, he told the police that he had been drinking heavily the previous night and did not remember anything that happened before he was apprehended. The police indicated that Casino was genuinely surprised when he learned he was being charged with burglary.
 {¶ 11} At the close of its case, the State requested that the court provide jury instructions on the lesser-included offense of burglary, a felony of the fourth degree, while Casino requested jury instruction on the lesser-included offense of trespass. The trial court granted the State's request and denied Casino's. Thereafter, the jury found Casino guilty of the lesser-included offense of burglary. The trial court sentenced Casino to a prison term of seventeen months.
 Sufficiency of Evidence {¶ 12} In the second assigned error, which we find dispositive of this appeal, Casino argues the evidence was insufficient to sustain a conviction for burglary. We agree.
 {¶ 13} A challenge to the sufficiency of the evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[1] On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[2] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[3]
 {¶ 14} Casino was convicted of burglary in violation of R.C.2911.12(A)(4), which provides as follows:
 "(A) No person, by force, stealth, or deception, shall do any of the following:
 (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
 {¶ 15} In the instant case, there was no evidence presented that Casino used force to enter the house. McCoy testified in pertinent part as follows:
 "Q. Do you have any idea how somebody got into your house?
 A. Well, the bottom lock where you come in on the side had to be open. And the top lock where you come into our house had to be open, too.
 Q. So there are two doors?
 A. It's two doors.
 Q. Outside door and then an inside ?
 A. There is an outside door that leads to both the apartments, the downstairs and the upstairs. And then it's the door that you come into the apartment upstairs.
 "* * *
 "Q. Okay. Now that night when all this happened do you recall — who in your family locks the door?
 A. Well, see the top door, that's to the — that's to our house, it leads to the basement. So my girlfriend she goes in and out that door. Like, she might leave out that door and go down to the basement and wash and then come back up. So that door, maybe that's why that door was open."
 "* * *
 "Q. And you think the door downstairs is where we believe my client entered, correct?
 A. Yes.
 Q. Now you and your girlfriend make sure that door is locked at night?
 A. Well, at this time the tenant was new staying downstairs so she didn't have a key. So, like, if it wasn't locked it would be maybe she just left and was coming right back. She was in the process of getting a key to that door.
 Q. So it could have been left open because of the other tenant not having a key?
 A. Well, that's what she said when the cops came, she said she had the door open."[4]
 {¶ 16} The above testimony strongly suggests that both the side door to the duplex and the door to the second floor apartment were open when Casino entered the dwelling. In the absence of any evidence that the doors to the habitation were locked before Casino's entry, or were damaged by his use of force in gaining entry, there is insufficient evidence of force to support a conviction for burglary in violation of R.C. 2911.12(A)(4).
 {¶ 17} The evidence also fails to establish that Casino trespassed by means of stealth or deception. "Stealth" has been defined as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission."[5]
 {¶ 18} Here, testimony was elicited at trial which indicated that Casino banged on the door to Holcomb's apartment. Holcomb refused to open the door because she did not recognize Casino and thought he might have been visiting McCoy and Tolbert. Casino's action of banging on the door to Holcolm's apartment refutes the notion that he was attempting to enter the dwelling secretly or clandestinely.
 {¶ 19} In addition, Tolbert testified that in the early morning of October 4, 2005, she heard the sound of someone playing pool in the basement. She believed it was McCoy, but later learned it was not. Further, McCoy testified that at approximately 6:30 a.m., the sound of someone counting change emanated from the kitchen. Finally, the record reveals that Casino placed his identification card, address book, belt, and tennis shoes on the kitchen counter. All this evidence indicates that Casino was not trying to conceal himself to avoid discovery.
 {¶ 20} After considering the record before us, we conclude that the State has failed to prove, beyond reasonable doubt, that Casino used force, stealth or deception to gain entry into the dwelling. Accordingly, we sustain Casino's second assigned error.
 {¶ 21} Our disposition of Casino's second assigned error renders the remaining errors moot. App.R. 12(A)(1)(c).
Judgment vacated.
It is, therefore, considered that said appellant recover from appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A. J., and MARY EILEEN KILBANE, J., CONCUR
[1] State v. Thompkins (1997), 78 Ohio St.3d 380.
[2] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[3] Id. at 43.
[4] Tr. at 176-181.
[5] State v. Ward (1993), 85 Ohio App.3d 537, 540, quoting State v.Lane (1976), 50 Ohio App.2d 41, 47.