[Cite as *State v. Buckner*, 2024-Ohio-5256.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 15-24-02

    v.

JACK K. BUCKNER,

    **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR-23-05-059

**Judgment Affirmed**

**Date of Decision: November 4, 2024**

**APPEARANCES:**

    *Ian A. Weber* for Appellant

    *Eva J. Yarger* and *Morgan A. Jackson* for Appellee

**MILLER, J.**

{¶1} Defendant-Appellant, Jack Buckner ("Buckner"), appeals from the January 24, 2024, judgment of the Van Wert County Court of Common Pleas, following a two-day jury trial. In addition to claiming error in the jury instructions, Buckner challenges his aggravated burglary conviction on sufficiency and manifest-weight-of-the-evidence grounds. For the reasons that follow, we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

{¶2} On June 1, 2023, the Van Wert County grand jury indicted Buckner on two counts. The first was a charge of aggravated burglary in violation of R.C. 2911.11(A)(1), a first-degree felony, with the alleged underlying criminal offense being assault. The second count was domestic violence, in violation of R.C. 2919.25(A) and (D)(4). The charge indicated Buckner had previously been convicted of two offenses of domestic violence, making this offense a third-degree felony.

{¶3} The matter was tried to a jury on December 18 and 19, 2023. The case involves four brothers: Appellant Buckner; Eric Buckner ("Eric"), the victim; Shawn Buckner ("Shawn"), who lived with Eric; and Jeff Buckner ("Jeff"), Appellant Buckner's twin, who accompanied him on the night at issue. For about a year prior to the incident in question, Eric had been living at a house with Shawn, Shawn's wife, and Shawn's children. According to Eric, Shawn and Shawn's wife had allowed him to live there because he had no other place to live at the time. Eric

paid his portion of the rent to Shawn, who, in turn, paid rent to Buckner. Buckner did not live in the house; he lived in a different city with his daughter and Jeff.

{¶4} In the very early morning hours of May 6, 2023, Eric was the only person at the house. According to Eric, Buckner and Jeff parked in the alley near the back door while he was asleep, broke the padlock hasp off the back door that kept the door shut, entered the house, and came into his bedroom. Eric testified that Buckner punched him, they started wrestling and fighting, Eric was knocked unconscious temporarily, and—upon regaining consciousness—Eric fled out the front door. Eric further testified that Buckner threw the first punch. He did not know why Buckner had come to the house, and neither Buckner nor Jeff had attempted to call him before showing up uninvited.

{¶5} At 2:12 a.m., after fleeing from the house, Eric called 9-1-1 and requested assistance. Deputy Avery Jones of the Van Wert County Sheriff's Office ("Deputy Jones") met with Eric, who had swelling around his left eye and lips, along with some cuts. Another deputy on the scene took pictures of Eric's injuries, and those pictures were admitted into evidence during the trial. Deputy Jones testified that the swelling around Eric's left eye and his lips increased while he was at the scene, indicating the recent nature of the injury. Deputy Jones explained that, based on his investigation, a part of a metal latch on the back door had been pried back to gain greater access to a narrow portion of the latch, which was then pinched off by a bolt cutter or similar device—as evidenced by tool marks on the latch.

{¶6} During the Defense's case-in-chief, both Buckner and his brother Jeff testified that, on the night in question, they were worried about Eric using drugs and went to the house because they wanted to check on his well-being.[1] Buckner testified that Eric "was doing some drugs and me and [Jeff] thought better go over there and make sure he ain't gonna do nothing bad or be all bad for him if he didn't." (Trial Tr. at 319). Buckner also testified that he had a recent altercation with his brother Shawn about rent payments, and Buckner "was hoping my brothers and them do the right thing and pay rent." (*Id.* at 321).

{¶7} Buckner denied assaulting Eric. Both Buckner and Jeff testified that they tried to call Eric before they entered the house on May 6, 2023. Jeff testified, "there was a lock on the [back] door [to the house] that wasn't there the day before and, hell, it just pretty much just fell apart. If you ask me, you touch it and it fell apart." (*Id.* at 299). Buckner similarly testified that the latch "just fell apart." (*Id.* at 323). According to Buckner, they entered the house, and a meth pipe was sitting on a table, which meant to him that Eric had drugs—something that Shawn's wife would never allow. Buckner and Jeff both testified that Eric got upset and an altercation between Buckner and Eric ensued, where Eric shoved Buckner. While Jeff testified that he (Jeff) "smacked" Eric (*id.* at 304), Buckner agreed with the

---

[1] Deputy Jones did not locate any illegal substances in the house and testified that Eric was not showing any signs of impairment on the night in question.

statement: "other than Eric's shove and [Buckner] holding on to him, the only other contact that happened that evening was a hug between [him] and Eric." (*Id.* at 329).

**{¶8}** At the conclusion of the trial, the jury found Buckner guilty of the aggravated burglary count and not guilty of the domestic violence count. After the jury verdict, Buckner moved for acquittal, pursuant to Crim.R. 29. The trial court denied the motion. On January 24, 2024, the trial court sentenced Buckner to serve a mandatory six to nine years in prison. This appeal followed.

## II. ASSIGNMENTS OF ERROR

**{¶9}** Buckner raises three assignments of error for our review:

### First Assignment of Error

**The failure to instruct the jury on the lesser included offense of trespass denied appellant/defendant his federal and state constitutional rights to trial by jury and due process guaranteed by the Sixth and Fourteenth Amendments as well as by Article I, Section 10 of the Ohio Constitution.**

### Second Assignment of Error

**The defendant was denied federal and state due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when he was convicted on evidence that was insufficient as a matter of law to sustain the conviction for the offense of [aggravated] burglary.**

### Third Assignment of Error

**The guilty verdict for aggravated burglary against appellant was against the manifest weight of the evidence and contrary to law.**

## III.   DISCUSSION

{¶10} For ease of discussion and analysis, we elect to review Buckner's assignments of error out of order.

### A.     Second Assignment of Error

{¶11} In his second assignment of error, Buckner admits there was evidence presented to support a conviction for trespass (Appellant's Brief at 10-11) but argues there was insufficient evidence that the trespass was committed by force, stealth, or deception necessary to sustain the aggravated burglary conviction.  He asserts "there was evidence presented that the door of the residence may have been open and the lock was not secured on the door," and Buckner "openly and notoriously entered the residence as he often did."  (*Id.* at 10).

#### 1.     Standard of Review

{¶12} Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Dent*, 2020-Ohio-6670, ¶ 15.  Thus, our review is de novo. *Id.*   A sufficiency challenge disputes whether a party has met its burden of production at trial.  *State v. Messenger*, 2022-Ohio-4562, ¶ 26.  "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *Dent* at ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve

-6-

evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 2023-Ohio-2193, ¶ 26 (3d Dist.); *see also Jenks* at 279.

### 2. Applicable Law

{¶13} The term "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The aggravated burglary statute provides, in part:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure . . . , when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if any of the following apply:
>
> > (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.] . . .

R.C. 2911.11(A)(1). "A criminal trespass occurs when a person 'without privilege to do so,' '[k]nowingly enter[s] or remain[s] on the land or premises of another.'" *State v. O'Neal*, 87 Ohio St.3d 402, 408, 2000-Ohio-449 (2000), quoting R.C. 2911.21(A)(1). "It has long been established in Ohio that the force element of an aggravated burglary charge can be accomplished through the opening of a closed" door, even if the door is unlocked. *State v. Howard*, 2005-Ohio-5135, ¶ 9 (8th Dist.); *see also State v. Lewis*, 2024-Ohio-607, ¶ 41 (6th Dist.) ("[a]ny force, however slight, is sufficient to establish the 'force' element of aggravated burglary").

### 3. Analysis

**{¶14}** Buckner specifically challenges the use of force to gain admittance into the residence and insinuates there was no evidence of violence or compulsion used. Regarding whether the trespass was "by force," we find there was ample supporting evidence presented at trial to establish that Buckner did not simply walk through an open doorway or even an unlocked door. For example, Eric testified there was a padlock on the outside of the back door to keep the door shut, and that padlock had been there for a while. He further testified that Buckner and Jeff broke that lock off of the door and entered the house. Additionally, Deputy Jones testified that, based on his investigation, a part of a metal latch on that door had been pried back to gain more access to a narrow portion of the latch, which was then pinched off by a bolt cutter (or similar tool), as evidenced by marks on the latch. Photos of the door and latch were admitted into evidence, along with the padlock itself still attached to the portion of the latch that appears to have been cut. The evidence presented at trial, when viewed in a light most favorable to the prosecution, was more than sufficient to allow a rational trier of fact to find the "force, stealth, or deception" element of the crime proven beyond a reasonable doubt.[2]

**{¶15}** Buckner's second assignment of error is overruled.

---

[2] We are also mindful the incident occurred around two o'clock in the morning under cover of darkness, thus also tending to establish the stealthy conduct of Buckner. *Howard* at ¶ 9.

### B.    Third Assignment of Error

{¶16} In the third assignment of error, Buckner argues the guilty verdict on the aggravated burglary count was against the manifest weight of the evidence.  He specifically contends that the evidence did not demonstrate he (1) "entered the house with purpose to commit a criminal offense" or (2) "inflicted physical harm, or attempted or threatened to inflict physical harm."  (Appellant's Brief at 12).

#### 1.    Standard of Review

{¶17} The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion."  *Messenger*, 2022-Ohio-4562, at ¶ 26.  "[W]e review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial."  *State v. Wilks*, 2018-Ohio-1562, ¶ 168.  Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment."  *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.  To reverse a judgment from a jury trial on the weight of the evidence, all three appellate judges must concur.  Ohio Const., art. IV, § 3(B)(3).

### 2. Applicable Law

**{¶18}** Aggravated burglary requires that a person trespass in an occupied structure "with purpose to commit in the structure . . . any criminal offense." R.C. 2911.11(A)(1). "'[T]he element of purpose to commit a crime can be satisfied when intent is formed at any point during the trespass and need not be formed prior to entering the occupied structure.'" *State v. Stevens*, 2016-Ohio-446, ¶ 35 (3d Dist.), quoting *State v. Pickens*, 2008-Ohio-1140, ¶ 17 (3d Dist.); *see also State v. Fontes*, 87 Ohio St.3d 527, 2000-Ohio-472 (2000), syllabus ("[f]or purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass"). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶19}** The "criminal offense" alleged in the aggravated burglary count here was assault, in violation of R.C. 2903.13. Under the statutes relevant to this case, an assault occurs when a person "knowingly cause[s] or attempt[s] to cause physical harm to another." R.C. 2903.13(A). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶20}** Aggravated burglary, as charged in this case, also requires proof that the "[t]he offender inflict[ed], or attempt[ed] or threaten[ed] to inflict physical harm on another." R.C. 2911.11(A)(1). The same definition of "physical harm to persons" from R.C. 2901.01(A)(3) applies. *Stevens* at ¶ 30.

### 3. Analysis

**{¶21}** Buckner's challenge to the manifest weight of the evidence extends only to the elements of whether he had the "purpose to commit a criminal offense" and whether he "inflicted physical harm or attempted or threatened to inflict physical harm." Accordingly, our analysis focuses on those two elements. *See Haller*, 2012-Ohio-5233, at ¶ 10 (3d Dist.).

**{¶22}** As shown in the factual recitation above, the parties presented conflicting testimony at trial concerning these elements. Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, we determine that the jury did not clearly lose its way and create a manifest miscarriage of justice in resolving conflicts in the evidence and deciding the State had proven those elements beyond a reasonable doubt. *See Stevens*, 2016-Ohio-446, at ¶ 35-36 (3d Dist.) (support for the purpose and physical harm elements included evidence of physical assault to the victim, such as testimony that defendant choked the victim, testimony regarding the victim's injuries, and photographic evidence of the victim's injuries). Deputy Jones testified to the

injuries he observed on Eric that were also documented in photographs shown to the jury. Also, Eric testified his injuries were caused when Buckner hit him.

**{¶23}** Buckner's third assignment of error is overruled.

### C. First Assignment of Error

**{¶24}** In the first assignment of error, Buckner contends the trial court failed to instruct the jury on the lesser-included offense of trespass, denying him certain constitutional rights. He argues that "the lesser-included offense of trespass was not only supported by the evidence, it was necessary to avoid a fundamental miscarriage of justice." (Appellant's Brief at 8).

### 1. Standard of Review

**{¶25}** Buckner's trial counsel did not request a jury instruction on trespass as a lesser-included offense for the aggravated burglary count or object on this basis. Therefore, our review is limited to plain error. *State v. Godsey*, 2024-Ohio-629, ¶ 35 (3d Dist.); Crim.R. 30(A) ("[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection").

**{¶26}** Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The appellant "bears the burden of proof to demonstrate plain error on the record." *State v. Rogers*, 2015-Ohio-2459, ¶ 22. "By its very terms, the rule places three

-12-

limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68 (2002). "First, there must be an error, i.e., a deviation from a legal rule." *Id.* "Second the error must be plain," meaning "an error must be an 'obvious' defect in the trial proceedings." *Id.* "Third, the error must have affected 'substantial rights,'" meaning "that the trial court's error must have affected the outcome of the trial." *Id.* "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it." *Id.* The Supreme Court of Ohio has acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.*

### 2. Applicable Law

**{¶27}** "To determine whether a criminal defendant was entitled to a jury instruction (charge) on a lesser included offense requires a two-step analysis." *State v. Turks*, 2010-Ohio-5944, ¶ 18 (3d Dist.). "First the reviewing court must determine whether the one offense is, in fact, a lesser included offense of the other offense." *Id.* "Second, the reviewing court must determine whether the trial court was obligated to give a jury instruction on the lesser included offense under the specific facts of the case." *Id.* "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both

Case No. 15-24-02

an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus.

### 3. Analysis

{¶28} The first step in the analysis is met here. It is not disputed that criminal trespass is a lesser-included offense of aggravated burglary. *See also* R.C. 2911.11; R.C. 2911.21(A)(1); *State v. Johnson*, 1999 WL 152850, *3 (3d Dist. Feb. 25, 1999).

{¶29} However, Buckner has not demonstrated he is entitled to plain-error relief when analyzing the second step. Buckner's assertion at trial that he had a privilege to enter the home runs against his appellate admission that "the lesser-included offense of trespass was . . . supported by the evidence." (Appellant's Brief at 8). If the jury believed Buckner had a privilege to be in the residence, then there could be no trespass either for the aggravated burglary charge or the lesser offense of criminal trespass. As explained above, a criminal trespass occurs when a person, "*without* privilege to do so," knowingly enters or remains on the land or premises of another. (Emphasis added.) R.C. 2911.21(A)(1). For a trial court to give a jury instruction on the lesser-included offense of trespass, the evidence presented at trial must reasonably support a *conviction* for trespass. *Thomas*, 40 Ohio St.3d 213 at paragraph two of the syllabus. In fact, it is evident trial counsel was employing dual theories: (1) that Buckner had a privilege to enter the property, thereby defeating the trespass element, and (2) that no force was employed to gain entry. (Trial Tr. at

-14-

132-133, 385).  Therefore, Buckner's trial counsel would have no reason to request a lesser-included-offense instruction for trespass.  *E.g., Godsey*, 2024-Ohio-629, at ¶ 37 (3d Dist.) (a trial court does not commit plain error in failing to provide an unrequested jury instruction where the decision not to request the instruction could be considered trial strategy).  Trial counsel could not have argued the defense of privilege while at the same time conceding the evidence was sufficient to support a conviction on the lesser-included offense of trespass.

**{¶30}** Buckner's first assignment of error is overruled.

## IV.    CONCLUSION

**{¶31}** For the foregoing reasons, Buckner's assignments of error are overruled.  Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Van Wert County Court of Common Pleas.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/jlm**