[Cite as *State v. Lester*, 2025-Ohio-324.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JAMIE LESTER,

    DEFENDANT-APPELLANT.

CASE NO. 3-24-15

O P I N I O N

Appeal from Crawford County Common Pleas Court
Trial Court No. 24-CR-0025

**Judgment Affirmed**

**Date of Decision: February 3, 2025**

APPEARANCES:

    *Howard A. Elliott* **for Appellant**

    *Ryan M. Hoovler* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Jamie Lester ("Lester"), appeals from the April 22, 2024 judgment issued by the Crawford County Court of Common Pleas following a jury trial and sentencing. Lester was convicted of criminal trespass in a habitation. He now argues on appeal that his trial counsel was ineffective for failing to make a Crim.R. 29 motion for acquittal at the close of the State's case and, therefore, his conviction must be vacated. However, Lester has not shown that such a motion would have had a reasonable probability of success and, accordingly, has not established ineffective assistance of counsel. As further explained below, we affirm.

**I.     FACTS AND PROCEDURAL HISTORY**

{¶2} On January 23, 2024, the Crawford County grand jury indicted Lester on a single count: trespass in a habitation, a fourth-degree felony, in violation of R.C. 2911.12(B). The case proceeded to trial on April 11, 2024.

{¶3} Two witnesses testified during the State's case-in-chief. Brady Keaton ("Keaton") testified that, on January 11, 2024, he was at the home where he had lived all 19 years of his life. He lived there with his father. The house had two doors, one in the front that was typically locked and the other in the back that typically was not locked. Keaton testified they usually use the back door because that is where the driveway is located. Significantly, upon being further questioned

about the back door, Keaton testified that door has a latch or handle and it closes securely. Keaton explained, "it's a regular door" and they typically did not lock it because they did not have a key for it and it is a safe neighborhood. (Trial Tr. at 119).

{¶4} On the day in question, Keaton went to sleep after getting home from work. He awoke to his dogs barking. Upon walking out of his bedroom, he saw Lester coming toward him from inside the back of the house. Lester asked Keaton what Keaton was doing. Puzzled, Keaton just looked at him because Keaton was unsure what was happening and was trying to mentally process the situation. Although he had seen Lester before, and recognized him as living in the neighborhood, Keaton did not personally know Lester and had never seen him in the house before.

{¶5} Lester then started walking back towards the rear of the house to the room he had emerged from, grabbed some belongings, walked to the game room in the house, sat down, and asked Keaton for a bottled water. Because Keaton was unsure what was really happening and did not want to escalate the situation, he got Lester a bottle of water. Lester then started talking about a professional baseball player and, about two minutes later, got up and walked out of the house. Keaton promptly locked the back door from inside and called his father to verify that his father had not given Lester permission to be in the house and was not expecting

anyone in the house. Keaton's father replied, "Absolutely not." (*Id.* at 118). Keaton was not aware of Lester having any permission to come into the house that day.

{¶6} After calling the investigating officer to testify, the State rested its case. Lester's attorney did not move for an acquittal pursuant to Crim.R. 29 at that time. He proceeded with the defense's case, calling Lester to testify on his own behalf, and then the defense rested. At that time, Lester's attorney made a Crim.R. 29 motion for acquittal, which the court denied. The jury returned a guilty verdict on the charged offense. The trial court sentenced him to serve 18 months in prison, in addition to 540 days for a post-release control violation to be served consecutively to the 18-month term. This appeal followed.

## II.   ASSIGNMENT OF ERROR

Lester raises a single assignment of error for our review:

### Assignment of Error

**The Defendant/Appellant was afforded ineffective assistance of counsel by the failure of trial counsel to make a Criminal Rule 29 motion for acquittal at the close of the State's presentation of evidence in that the State had failed to establish the Defendant/Appellant's trespass was by force, stealth or deception, in such that there was a reasonable probability that the motion would have been granted at that time and as a result, the conviction of the Defendant/Appellant must be vacated.**

## III.   DISCUSSION

{¶7} In the assignment of error, Lester argues he received ineffective assistance of counsel because of counsel's failure to move for acquittal, pursuant to Crim.R. 29, at the close of the State's case. We disagree.

### A.   Applicable Law

**{¶8}** The trespass in a habitation statute provides that "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." R.C. 2911.12(B). One way a person can commit a criminal trespass is by knowingly entering or remaining on the land or premises of another, without privilege to do so. R.C. 2911.21(A)(1); *State v. Choudri*, 2023-Ohio-4476, ¶ 18 (3d Dist.). The term "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Importantly for purposes of this case, the force element can be established if the person opened a closed door, even if that door is unlocked. *State v. Buckner*, 2024-Ohio-5256, ¶ 13 (3d Dist.); *State v. Rollison*, 2010-Ohio-2162, ¶ 23 (3d Dist.) ("it is well established in Ohio that the act of opening a closed but an unlocked door is sufficient to establish the 'force' requirement").

**{¶9}** To establish ineffective assistance of counsel, the appellant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Tench*, 2018-Ohio-5205, ¶ 264. "Reversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfying this two-pronged test, and the failure to make either showing is fatal to the claim." *State v.*

*Radabaugh*, 2024-Ohio-5640, ¶ 51 (3d Dist.), citing *State v. Conway*, 2006-Ohio-791, ¶ 165, 168.

**{¶10}** Regarding the first requirement, "[i]n order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment." *State v. Houston*, 2010-Ohio-6070, ¶ 35 (3d Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]he errors complained of must amount to a substantial violation of counsel's essential duties to his client." *Id.* at ¶ 36. "When a claim of ineffective assistance of counsel is based on counsel's failure to file a particular motion, the appellant must show that the motion would have had a reasonable probability of success." *Radabaugh* at ¶ 52. "Otherwise, 'counsel is presumed to have been effective since the filing of the motion would have been a 'futile act,' which the law does not require counsel to undertake.'" *Id.*, quoting *State v. Hahn*, 2021-Ohio-3789, ¶ 14 (3d Dist.).

**{¶11}** Regarding the second requirement, "[p]rejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Houston* at ¶ 36, quoting *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142. "Failure to move for an acquittal under Crim. R. 29 is not ineffective assistance of

counsel, where the evidence in the State's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the charged offense have been proved beyond a reasonable doubt, and that such a motion would have been fruitless." *State v. Poindexter*, 2007-Ohio-3461, ¶ 29 (2d Dist.); *see also State v. Turner*, 1997 WL 101776, *3 (3d Dist. Feb. 27, 1997) ("inaction on the part of counsel certainly cannot be deemed 'ineffective assistance' if it can be determined that a Crim.R. 29 motion for acquittal would never have been granted in the first place").

{¶12} Under Crim.R. 29, if a defendant moves for acquittal "after the evidence on either side is closed, [then the court] shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 2006-Ohio-2417, ¶ 37. A sufficiency challenge disputes whether a party met its burden of production at trial. *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 2020-Ohio-6670, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Dent* at ¶ 15. Thus, our review is de novo. *Id.*

### B. Analysis

{¶13} We note at the outset that, at the time the trial court would have considered the hypothetical Crim.R. 29 motion for acquittal, the evidence from the State's case-in-chief would have been closed but the defendant would not yet have presented evidence in his case-in-chief. Thus, we consider only the evidence presented up to the close of the State's case-in-chief, i.e., only the evidence that would have then been available to the trial court.[1] *E.g.*, *State v. Bowman*, 2022-Ohio-2705, ¶ 58 (2d Dist.) ("when reviewing a trial court's denial of a Crim.R. 29(A) motion for acquittal made at the completion of the State's case-in-chief, an appellate court's review is limited to the evidence then available to the trial court"); *State v. Whiteaker*, 2010-Ohio-3502, ¶ 15 (8th Dist.).

{¶14} Lester's argument on appeal focuses on the "by force, stealth, or deception" element for trespass-in-a-habitation. We find that the evidence presented during the State's case-in-chief, when viewed in a light most favorable to the prosecution, was sufficient to allow a rational trier of fact to find the "force" element of the crime beyond a reasonable doubt. Although Keaton testified they typically did not *lock* the back door, it was a "regular door" that closed and there

---

[1] Therefore, we do not consider, for example, Lester's testimony during the defense's case that he went to the back door of the house, knocked, the door came open, he walked in, and "the voices" told him to go to the back bedroom. (Trial Tr. 152).

was no evidence it was open at the time in question. The jury could have properly inferred from Keaton's testimony that Lester opened a closed door to the house, thus establishing the requisite "force." *Buckner*, 2024-Ohio-5256, at ¶ 13 (3d Dist.); *see also State v. Patton*, 2013-Ohio-961, ¶ 13-15 (2d Dist.) (finding sufficient evidence of trespass because "the jury could have readily inferred" from testimony that defendant entered victim's garage without permission to steal a lawnmower, but not burglary because the main door to the attached garage was open).[2] In fact, Keaton's testimony, when viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find, beyond a reasonable doubt, that Lester, by force, trespassed in Keaton's permanent habitation when Keaton was present, in violation of R.C. 2911.12(B).

**{¶15}** Thus, even if Lester's trial counsel had moved for acquittal pursuant to Crim.R. 29 at the close of the State's case, Lester has not shown such a motion had a reasonable probability of success. *Radabaugh,* 2024-Ohio-5640, at ¶ 52 (3d Dist.); *Poindexter*, 2007-Ohio-3461, at ¶ 31 (2d Dist.) (no ineffective assistance of counsel because, "[h]ad a motion for acquittal been made by defense counsel, it would have been properly overruled"). Accordingly, Lester has not established ineffective assistance of counsel. *Turner*, 1997 WL 101776, at *3 (3d Dist. Feb. 27,

---

[2] Similar to the lack of "force" in *Patton* where the evidence demonstrated the entry point was open, Lester relies on *State v. Casino*, 2006-Ohio-6586 (8th Dist.), where the testimony at trial "strongly suggest[ed] that both the side door to the duplex and the door to the second floor apartment were open when Casino entered the dwelling." *Casino* at ¶ 15-16. Therefore, both cases are distinguishable on the issue of "force" used to gain entrance into the premises.

1997); *State v. Ramsey*, 2022-Ohio-3389, ¶ 45 (12th Dist.) ("any Crim.R. 29 motion made by trial counsel would have been futile," so "trial counsel did not provide ineffective assistance by failing to move for acquittal at the close of the state's evidence").

## IV. CONCLUSION

{¶16} For the foregoing reasons, Appellant's assignment of error is overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Crawford County Court of Common Pleas.

*Judgment Affirmed*

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

**/jlm**